BENNINGTON,
February,
1834.
_____

## HENRY KELLOGG vs. SUSANNAH ROBINSON.

A covenant or stipulation in a deed of conveyance, that the grantee shall maintain the partition fence between the land conveyed and other lands of the grantor, runs with the land and binds a subsequent grantee.

A declaration upon the covenant against incumbrances, setting forth such an incumbrance, created by an ancient deed, is bad upon demurrer, if it do not connect the defendant's title with such ancient deed.

This was an action of covenant broken, and in the county court came up for trial upon demurrer to the declaration, which was in substance, that the defendant, by deed dated October 12th, 1824, conveyed to the plaintiff, his heirs and assigns, a certain lot of land in Bennington, in which was contained, among others, a covenant in common form, against incumbrances.— The breach is assigned as follows :

" Yet the said Susannah did not keep her said covenant, but has broken the same ; for the said Henry says, that at the time of the execution of said deed, the said land was not free from all incnmbrances whatsoever. And the said Henry further says, that in the deeds of said premises from David Robinson to Noah Smith, dated in 1783 and 1797, is contained a stipulation that the said Noah is to make the whole of the fence, and to maintain the fence around said premises, or that part of said fence adjoining said Robinson's land. And the said Noah Smith and his assigns, from the time of the execution of said deeds by the said David, down to the time of the execution of the deed of said premises by the said Susannah to the said Henry, a period of more than twenty years, were accustomed to, and did make and maintain all the fence around said premises, whereby said premises, at the time of the conveyance of the same by the said Susannah to the said Henry, were so incumbered that the said Henry and his assigns were, and are liable to make or maintain all the fence around said premises, or that part which adjoins the said David Robinson's lands, which is about 40 rods ; and said premises are still charged with said incumbrance. And the said Susannah her covenants aforesaid has not kept, but has broken the same.—To the damage of

the plaintiff, as he says, the sum of five hundred dollars, &c."

To this declaration the defendant plead her general demurrer, and also assigned the following special causes of demurrer, to wit: "That the said Henry has only made a general assignment of the breach of said covenant, neglecting the words of the covenant, and has not, in his said declaration, averred any facts in his pretended special assignment of the breach of said covenant which constitute an incumbrance on said premises.— And this she is ready to verify. Wherefore," &c.

To which general and special demurrer the plaintiff joined.

Judgment of the court was for the plaintiff.

Whereupon, exception was taken by the defendant, which was allowed and certified.

*M. S. Bennet for defendant.*—The plaintiff's declaration is insufficient, because it contains no *sufficient* assignment of the breach of the covenant declared on, for the following reasons:

1. It is not alleged that even Noah Smith covenanted with David Robinson to build and maintain the fence around said premises. It is only said that in the deeds from Robinson to Smith there is contained a *stipulation,* &c.

Whether this *stipulation* was in the nature of a *limitation, condition,* or by way of *covenant,* is entirely uncertain.

And besides, if the plaintiff relies on it as a covenant between the said David and Noah, he must set it forth in direct language, and not by way of recital.

The *issue* should be, whether there was such a covenant or not; and not whether there is in any certain deed, contained a certain *stipulation.*

Such *stipulation* may be put into a deed after its execution, and very improperly, to say the least; and yet there is contained in the deed, in the language of the declaration, such *stipulation.*

2. But supposing the declaration set forth a *covenant* between David Robinson and Noah Smith, that he should build the fence, &c.—How is this to bind the assignee, if not named?

The rule is, that if the covenants relate to a thing, *not in esse* at the time of the deed, but to be done on the thing demised, as a covenant to build a new wall on the thing demised,

BENNINGTON,
February,
1834.
―――――
Kellogg
vs.
Robinson.

the covenant does not run with the land and bind the assignee, unless named in the covenant.―5 Coke R. 16, *Spencer's case.*―Cro. Jac. 125.―2 Bac. 70.

The covenant would be merely a personal covenant. But in the present case there is no privity of estate between *Noah Smith* and *Susannah Robinson.*

It does not appear from the declaration that either David Robinson or Noah Smith ever had any title in these premises—much less that Susannah Robinson claims under Noah Smith. Her title is in no possible way connected or dependent on theirs.

3. The averment that Noah Smith and his assigns had been accustomed to build and maintain the fence for more than twenty years, can have no effect in this action of *covenant broken.*

The action is not predicated on a presumptive right.

The averment is an impertinent one in this action.

Suppose the defendant had taken issue on it, what right would have been settled by it?

The *legal* operation of the *covenant* is not to be varied by matter *extrinsic,* the *covenant,* or by the views which the parties may have had of it.―1 Salk. R. 197, *Green* vs. *Horne.*― 2 John. R. 362, *Cortelyou* vs. *Van Brundt.*

No doubt if the words of an *ancient* deed are *equivocal* the evidence of the usage of the parties under the deed are admissible to explain them.―16 John. R. 302, *White* vs. *Carey.*

*Counsel for plaintiff.*―On the part of the plaintiff it is contended, that it is a covenant real—that it is so far connected with, and annexed to the land, and so far concerns the mode of occupation and enjoyment of the thing demised, that it passes with it, and binds the assignee, though he be not expressly named, as the following authorities sufficiently show.―Swift's Digest, 357—do. 358.—Cro. James, 125.—3 Wilson, 25 —do. 29.—2 H. Blackstone, 133.—Cro. Eliz. 553.—Cro. Car. 221.

So covenant will lie against the assignee of the lessee, though not named; for every assignee, by accepting the possession, subjects himself to the performance of all covenants concerning the land; and covenants of repairs and building houses or walls, are covenants inherent to the land, and charge the assignee, though not named.—Swift's Digest, 358.—Cro. James, 125.— 5 Co. 24, a.

BENNINGTON,
February,
1834.

Kellogg
vs.
Robinson.

It is laid down, that a covenant which extends to the support of the thing demised, is *quodam modo*, appurtenant to it, and goes with it.—2 H. Black. 133.

It will be noticed in this case, that the declaration alleges, that by the stipulation in the deed of the premises, from David Robinson to Noah Smith, the said Noah Smith and his assignees are bound to maintain the whole of the fence, though assignees are not named; because they accepting the premises, must take them subject to all conditions that Noah Smith did; and that they were so included at the time defendant conveyed to plaintiff, is expressly alleged in the declaration. This the defendant has not denied, or confessed and avoided; but by the demurrer has admitted, which it would seem must put an end to the case.

The opinion of the court was pronounced by

PHELPS, J.—The sufficiency of this declaration depends upon the inquiry, whether it shows, upon its face, a subsisting legal incumbrance upon the land conveyed. It is argued on one side, that the "stipulation," as it is termed, in the deed from David Robinson to Noah Smith is in the nature of a mere personal covenant between the parties to that deed, not running with the land, nor binding upon the subsequent grantees. On the other hand, it is insisted, that the obligation attends the inheritance, and is of course an incumbrance upon the land, into whatever hands it may pass.

There are certain covenants concerning the realty so necessarily connected with it as to pass with it of necessity, and operate between other parties than the original parties to the covenant. Of this nature is the covenant of warranty in the deed of bargain and sale—a covenant against waste—a covenant to repair buildings—a covenant not to cut timber, or plough up meadow land, and the like. The reason why these covenants run with the land is, that unless they do so, they cannot be effectual; nor can the party for whose benefit they are created derive from them the benefit intended.

There is another class of covenants of a doubtful or equivocal character, and which may be treated either as merely personal, or as annexed to and running with the land. With respect to these, it is doubtless competent for the contracting parties, to make them either the one or the other, as they think expedient. When, therefore, the party covenants for himself and his as-

BENNINGTON,
February,
1834.

Kellogg
vs.
Robinson.

signs, it evinces an intent to bind the land, and the obligation becomes connected with, and qualifies his estate. Thus it is said, in *Spencer's* case, (5 Coke's Rep. 16,) " if lessee covenants for himself and his assigns, to build a new wall upon the land, this shall bind the assignee, *because named, and he is to take the benefit thereof.*"·

The latter part of this reason, however, has reference to another class of cases, where the thing covenanted for has no necessary connection with the land, and with respect to which no tenant could legally bind another. Thus it is said by Coke, " But although the covenant be for himself and his assigns, yet it is otherwise, if the thing to be done be *merely collateral to the land and not concerning the thing demised in any sort*, as a covenant to build a house, upon the land of the lessor, *not parcel of the demise.*"

It seems therefore, that with respect to the question, whether a given covenant runs with the land or not, the nature and purpose of the covenant is the. first criterion, and, where this is not decisive, the intent of the parties, as expressed in their deed, will determine. " When," says Ld. Coke, " the covenant extends to a thing in *esse* parcel of the demise, the thing to be done is in a manner annexed and appurtenant to the thing demised, and shall run with the land, and shall bind the assignee, although he be not bound by express words ;—as if the lessee covenant to repair houses," &c. But if the thing be *collateral*, as he expressed it, and not concerning the land, the assignee is not bound if named.

What then is the nature of the " stipulation" or covenant in question? It is thus set forth in the declaration : " And the said Henry further says, that in the deeds of said premises from David Robinson to Noah Smith, dated in 1783 and 1797, is contained a stipulation that the said Noah is to make the whole of the fence, and to maintain the fence around said premises, or that part of said fence adjoining said Robinson's land."

We take the fence described to be the partition fence between the premises conveyed and David Robinson's land ; and of course necessary to be maintained, for the benefit of the occupier. The stipulation contains· two parts : 1st, ' To *build* the fence.' Whether the obligation thus far would be considered as running with the land, is perhaps somewhat questionable. In *Bally* vs. *Wells*, 3 Wils, 25, it is said, that " if lessee

BENNINGTON,
*February,*
1834.

Kellogg
*vs.*
Robinson.

covenants to build a wall, and assigns over his estate, the grantee of the reversion shall have covenant against the assignee, notwithstanding the covenant wants the word ' assigns ;' yet every assignee, by accepting the possession, hath made himself subject to all covenants *concerning the land,* but not to collateral covenants. So, for a covenant which runs with the land, an action lies for or against the assignee, *although not named, quia terra transit cum onere.*" Upon the authority of that case, the obligation would be held to run with the land. But it is not necessary to decide this point, as that part of the covenant has probably been long since at an end.

The second part of the stipulation is, ' to maintain the fence,' &c. This is an obligation *in perpetuam.* That it concerns the land, and is not "collateral," is not to be questioned. It is equally clear, that Robinson, the covenantee, could not have the full benefit of it, unless it runs with the land. It is not to be supposed, that the parties intended Smith should be bound after parting with the land, nor that the obligation to maintain the fence should cease with a transfer of the estate. Besides, where is the distinction between a covenant to repair houses, (the case put by Coke,) and a covenant to maintain the fences? Where the covenants run *in perpetuam,* there can be no difference.

It is argued, that the fence not being *in esse* at the date of the covenant, the latter does not run with the land. The decision in Wilson conflicts with this argument. At the same time, such a covenant certainly concerns *the land,* a thing *in esse.* The maintenance of fences is necessary to the enjoyment of the estate. And the objection is no better founded than a similar objection to a covenant to repair houses would be, upon the ground that the particular separations were not *in esse* at the date of the covenant.

If we consider the fence itself as the principal thing, yet the argument has no better foundation. The first part of this stipulation is satisfied by building the fence: then comes the latter part, to *maintain* it; which, when it becomes operative, concerns a thing *in esse.* It has reference to a thing contemplated as existing, and which must actually exist when the covenant takes effect. If we regard the stipulation in the light of a condition of the grant, and in a deed poll, it could hardly be otherwise—all difficulty vanishes. If it be *a condition,* instead of a

Bennington,
February,
1834.
_____
Kellogg
vs.
Robinson.

covenant, whoever takes the estate, takes it *cum onere*. We are of opinion upon the question, that a covenant in a conveyance, to build and maintain the fences, runs with the land.

There is, however, another objection to this declaration, which is not so easily obviated. Admitting that the deed from David Robinson to Noah Smith created an incumbrance upon the land in the hands of Smith, yet this declaration shows no privity in estate between him and either of these parties. It is not alleged that the defendant derived her title from N. Smith, nor are any facts stated, from which it appears that she, or her grantee, the plaintiff, are privy to, or bound by the terms of that deed. For aught that appears, the title of the defendant, and which she conveyed to the plaintiff, might have been derived from a different source, and might have been adverse to the title of Robinson. For this reason the declaration is most decidedly bad.

Judgment that the declaration is insufficient.

The plaintiff, on motion, had leave to amend.