THE ATLANTIC DOCK COMPANY *vs.* LEAVITT and others.

THE SAME *vs.* RUSSELL and others.

The acceptance, by the grantee, of a conveyance containing a covenant by him, his heirs and assigns, as to the manner of building upon, or using, the premises conveyed, is equivalent to an express agreement on his part, to perform the covenant; and the obligation affects the title of his grantees. *Qui sentit commodum sentire debet et onus.*

Where the covenant was, among other things, not to erect or permit, upon the premises conveyed, any brewery, *distillery,* slaughter house, or "*other* noxious or dangerous trade or business," and the defendants, in one case, had erected a manufactory for the distillation of resin oil, and in the other, a manufactory for the production of paraffine; in both cases the buildings and machinery being like those usually employed in the distillation of alcohol, and the evidence showing that such distillation might be accomplished by means thereof; *Held* that the defendants were disabled by the covenant from erecting or maintaining such buildings or machinery; and that it was not necessary, in order to show a breach thereof, to prove an actual use of such buildings and machinery for the purpose of a distillery; that it was enough that they might be so used; and that a breach was committed before an actual use.

*Held*, also, that if the buildings in question were not distilleries, within the meaning of the covenant, they fell within the prohibition against "other dangerous trade or business."

APPEALS by the defendants, respectively, from judgments rendered at a special term, awarding a perpetual injunction in each of the above causes.

The defendants in both actions were owners or lessees of certain lots in the city of Brooklyn. These lots were conveyed by the Atlantic Dock Company to David F. Worcester, on the 15th of May, 1852, by a deed containing the following clause :

"And the said party of the second part for himself, his heirs and assigns, doth hereby covenant with the said Atlantic Dock Company and their successors, that neither the said party of the second part, or his heirs or assigns, shall or will at any time hereafter erect or permit upon any part of said lots any buidings except of brick or stone, with roofs of slate or metal, or any manufactory of gunpowder, glue, varnish,

vitriol, turpentine, or any brewery, distillery, slaughter house, or other noxious or dangerous trade or business."

This covenant was not signed by Worcester. He, however, caused the deed to be recorded, and the defendants admit that they derive title from the Atlantic Dock Company through Worcester.

The complaint in the first action alleged, that the said deed was delivered by the grantor, to the said David F. Worcester, grantee therein, and by the said David F. Worcester accepted ; and he and his assigns, the defendants herein, became thereby the owner and owners, or lessees, or occupants of the premises, and bound by the covenant aforesaid. That afterwards the defendants became and now are either owners, lessees, or occupants of the said premises, and have erected thereon frail wooden buildings for the purpose of manufacturing and distilling resin, oil, turpentine, pitch, paint, varnish, and similar substances, all of which acts and doings, on the part of the defendants, are contrary to the form and effect of the covenant contained in said deed, and of all of which the defendants had notice ; and that the defendants now are manufacturing said noxious articles on said premises.

And the plaintiff averred that the Atlantic Dock Company was the owner of valuable lots of land immediately contiguous to the premises now either owned or occupied by the defendants, and have heretofore conveyed or leased other real estate, by inserting in the deeds or leases a covenant similar in effect and substance to the one above set forth, on which are erected extensive and valuable manufacturing establishments ; and that the operations of the defendants were extremely hazardous, in the matter of fire risks, and several fires have already occurred during the last twelve months in the neighborhood of the defendants' premises, originating from manufacturing articles and substances hereinbefore mentioned, and no fire insurance companies will now take fire risks near the defendants' premises ; besides causing

noxious and offensive smells, and tainting and corrupting the atmosphere and producing a dense black smoke, that blackens every thing in the immediate neighborhood ; and the defendants, by their violation of said covenants, had prevented other lots in the vicinity of the above mentioned nuisances, from becoming saleable and tenantable, and had substantially diminished their value and condition, and hindered the plaintiff, and the grantees and lessees of said company from enjoying, selling and leasing their real estate. Wherefore the plaintiff demanded judgment in the sum of one thousand dollars, together with the costs of this action ; and for an injunction order, restraining the defendants, their counsellors and attorneys, agents and servants, from manufacturing and distilling resin oil, turpentine, pitch, paint, varnish and similar substances on said premises, occupied by them, and for such other and further relief as to the court might seem meet.

The defendants, by their answer, alleged that they were the owners of the said five lots of land described ; that they have a right to use and enjoy the same without any let, molestation, trouble, or suit ; and that in the enjoyment of said premises they have erected a suitable and proper building for the manufacture of resin oil on said premises. That their buildings are of brick, with a roof of composition of sand and other material. That they do not manufacture gunpowder, glue, varnish, vitriol or turpentine ; that they have not a brewery nor distillery, as contemplated and intended in said covenant, nor slaughter house. They aver that their business is not noxious or dangerous, and that their manufactory and the business conducted by them is not within the intent or meaning of the covenant, set up in the plaintiff's complaint herein. That it does not cause any noxious or offensive smells ; that it does not taint or corrupt the atmosphere, and that they do not produce a dense black smoke which blackens every thing in the neighbohood ; and that they have not in any way violated the covenant in said complaint set

up, and they aver that they have not, nor has their business rendered the property of said plaintiffs unsaleable, as in the complaint alleged ; and they deny each and every allegation in said complaint contained, not before particularly admitted or denied, except that the plaintiffs are the owners of other land, and that they conveyed to David F. Worcester with the covenant alleged.

The complaint in the second action was similar to that in the first. It alleged that a deed containing the same covenant as that in the other case, was delivered by the grantor to David F. Worcester, the grantee therein, and accepted by the latter ; and that he, and his assigns, the defendants, became thereby the owner and owners, or lessees or occupants of the premises, and bound by the covenant and agreement aforesaid. That afterwards the defendants became and now are either owners or occupants of the said premises, and have erected, or suffered or permitted to be erected thereon, frail wooden buildings, for the purpose of manufacturing and distilling tar, oil, petroleum, and similar substances, together with distillery bottoms, and are now manufacturing said articles and substances thereon, all of which acts and doings on the part of these defendants are contrary to the form and effect of the covenant contained in the said deed, and of all of which the defendants had notice. The complaint contained the same averments as in the other case, as to the dangerous and offensive character of the business carried on by the defendants upon their premises, its injurious effects upon property in the neighborhood, &c. and demanded judgment in the sum of $1000, together with costs ; and prayed for an injunction order, restraining the defendants, their counsellors, attorneys, agents and servants from distilling petroleum, tar and resin into any manufactured article whatever, on the premises occupied by them ; and for general relief.

The defendants, by their answer, denied that they were subject to the restrictions contained in the deed of the Atlantic

Atlantic Dock Company *v.* Leavitt.

Dock Company, as set forth in the complaint; also that they had in any manner violated the restrictions contained in said deed, as is alleged in the complaint; and they also denied all of the other allegations of said complaint. And they stated that until about the commencement of this suit, they had no knowledge or intimation that the plaintiffs were aggrieved, or complained of the manner in which the defendants occupied the premises in question.

The actions were tried at special term before Justice GIL-BERT, without a jury. He found the following conclusions of fact, in the first action, viz :

1. That the plaintiff conveyed by deed in fee, May 15, 1852, certain real estate to one David F. Worcester, his heirs and assigns, which includes five lots of ground situate on the southerly side of Wolcott and easterly side of Ferris streets, in the twelfth ward of the city of Brooklyn, by which the said Worcester agreed, among other things, for himself, his heirs and assigns, not to erect upon any part of the said lots any buildings except of brick or stone, with roofs of slate or metal, or any distillery or other dangerous business.

2. That this deed was delivered to the said David F. Worcester, and accepted by him, and he thereunder went into the possession of the thereby granted premises.

3. That the defendants, Charles F. Leavitt and John Smith, claim and hold title in fee to the said premises, derived from the said David F. Worcester, as his assigns, and who now own and occupy the same, subject to said agreement.

4. That the defendants have erected a distillery on the said premises, in which they distil resin oil, and other resinous substances.

5. That the defendants have erected on said premises buildings, whose roofs are not made of slate or metal.

6. That the defendants' business, in running said distillery on said premises, is dangerous.

The judge's conclusions of law were :

1. That the defendants had violated the said agreement in the particulars before mentioned.

2. That the defendants had erected a distillery on said premises, and were distilling therein resin oil, and other resinous substances, which acts and doings on the part of the defendants were also in violation of said agreement.

3. That the business of the defendants is dangerous, and inhibited by the said agreement.

The judge ordered and adjudged that the defendants, Leavitt and Smith, their agents and servants, be perpetually enjoined and restrained from erecting wooden buildings, or those having roofs which are not made of slate or stone on said premises, or maintaining any distillery or distilling therein resin oil, pitch and varnish ; and that the plaintiff have costs and disbursements of this action.

There were similar findings in the second case.

The following opinion was delivered by the judge at special term :

GILBERT, J. The acceptance by Worcester of the conveyance containing the covenant in question, was equivalent to an express agreement on his part to perform the same, and this obligation affected the title of his grantees ; " *qui sentit commodum sentire debet et onus.*" (2 *Co. Lit. by Thomas,* 187. 9 *Paige,* 659. 5 *B. & C.* 589.)

The question is whether there has been a breach of the duty thus created. That duty was " *inter alia*" not to erect or permit upon the premises conveyed, any brewery, *distillery,* slaughter house, other noxious or dangerous trade or business." The defendants in the first mentioned case have erected a manufactory for the distillation of resin oil. The defendants in the other case have erected a manufactory for the production of paraffine. In both cases the buildings and machinery are like those usually employed in the distillation of alcohol, and the evidence shows that such distillation might be accomplished by means thereof. I am of the opinion that

the duty assumed by the defendants disables them from erecting or maintaining such buildings or machinery, and that it is not necessary, in order to show a breach thereof, to prove an actual use of such buildings and machinery for the purpose of a distillery. It is enough that they may be so used, and a breach is committed before an actual use.

But if the buildings in question are not distilleries within the meaning of *the* covenant, I think they fall within the one against "*other dangerous trade or business.*" The obvious meaning of this language is a prohibition of any business which is as dangerous as that of a distilery, "*noscitur a sociis.*" The evidence leaves no room for doubt upon this subject.

The chief danger attending the distillation of alcohol arises from the excessive heat employed in the process, whereby the exposure of property to conflagration is increased. Such danger, in an equal degree, attends the business carried on by the defendants respectively. It is therefore "*dangerous*" within the meaning of the covenant. (*Cullen* v. *Butler*, 5 *M. & S.* 465. *Corning* v. *McCullough*, 1 *Comst.* 69. *Aikin* v. *Wasson*, 24 *N. R. Rep.* 484. *Broom's Leg. Max.* 450.)

For these reasons, and without passing on the other questions raised, the plaintiff is entitled to judgment.

*Wm. Coit* and *C. E. Soule*, for the appellants.

*N. Burchard*, for the respondent.

The COURT, at general term, adopted the above opinion of Justice GILBERT, as its own, and affirmed the judgments appealed from.

[ORANGE GENERAL TERM, September 9, 1867. *Lott, J. F. Barnard* and *Gilbert*, Justices.]