Neilson, Ch. J.
The question is as to continuing a preliminary injunction heretofore granted.
Each party holds in fee a portion of the plot of ground which had belonged to George S. Howland ; the defendants that part which was conveyed by Howland and wife to James W. Smith ; the plaintiffs the residue thereof. The deed executed by Howland and wife to Smith, October 14, 1848, conveying the property now held by the defendants, contained a special covenant in the words following:
“And the said party of the second part, for himself, bis executors, administrators and assigns, hereby covenants and agrees, in consideration of the premises aforesaid, to and with the said parties of the first part, their heirs and assigns, not to erect, or cause to be erected, any building or erection on that part of the premises hereby conveyed, southerly of the red line designated on the diagram hereto annexed, and the lines of said Howland’s land, which piece or portion of said premises is marked A on said diagram, and is eight feet wide by thirty-five feet in length ; and for a violation of this covenant the said party of the second part, for himself, his heirs, executors, administrators and assigns, hereby covenants and agrees to pay to the said parties of the first part, their executors, administrators or assigns, the sum of fifteen hundred dollars, liquidated damages.”
It appears that Howland had erected a building on *268 the land now belonging to the plaintiffs, with windows in the side wall of each of the three stories, overlooking the land afterwards so conveyed by him, and that, soon after his purchase, Smith built on the property, leaving the strip of land designated on the diagram by the letter A, open as required by his covenant. Both buildings remained standing when the defendants received their conveyance from Smith in August, 1872.
The defendants, about to improve their property, find it desirable to extend their new building over the whole of their land, including that so shown on the diagram. They deny that the special covenant so made by their grantor created an easement, or impressed any servitude in favor of the' other premises, requiring the space so designated to be kept open perpetually for. the purpose of light, air, or convenience, and claim that they have now the right to shake off the apparent restriction by paying the fifteen hundred dollars damages.
The plaintiffs, on the other hand, claim that an easement in favor of their premises was in existence when the defendants, with the .covenant in their grant- or’s deed before them, took their title, an estate impressed with the burden of a restriction, respected for more than twenty years; that their building is substantial and valuable, and that, for an important portion of it, they can have light and air only through the windows opening upon the adjoining space specified. They further claim that if that space be built upon, contrary to the specified covenant, and their windows closed, they would suffer great and irreparable injury.
The question presented is of great moment to the parties. The power invoked is to be exercised by the court in continuing or dissolving the injunction, in view of principles peculiar to courts of equity, and with great scrutiny, prudence, and deliberation.
The special covenant in the deed accepted by Smith *269 attached to the land, qualified the use to which he and those to claim under him with notice, could apply the portion so designated, and created a right in the nature of an easement for the benefit of the premises now held by the plaintiffs. The principal clause in the covenant is an unqualified undertaking not to place any building or erection on that strip of land. It is competent for one granting a portion of his lands to impose restrictions or exact stipulations as to any use or improvement of it which may tend to affect the value, enjoyment or profit of the contiguous lands retained by him (49 Penn., 289 ; 21 N. J. Eq., 188 ; 101 Mass., 512, 531 ; 99 Id., 285 ; 11 Gray, 359 ; 50 Barb., 135 ; 26 N. Y., 105).
And the appropriate remedy for an attempted violation of such .covenant or restriction is by injunction (2 Story Eq. Jur., § 927 ; 3 Paige, 254).
This covenant has been criticised with earnestness and subtlety, but I think it sufficient in form and substance. Though it does not mention the windows or their use, the motive for the restriction is apparent. Some benefit must have been contemplated. What benefit but light and air % It is riot to be supposed that the owner, who was so provident as to exact this covenant in respect to the strip of land opposite to the six windows giving light and a,ir to the interior of his building, hád not in view that necessity, or that the grantee, . seeing how that building was constructed, was not sensible of that benefit. In several familiar cases, courts in giving effect to restrictions of this nature, where the purposes were implied, perceiving what must have been in the minds of the parties, have inferred the purposes and benefits with reference to natural laws and necessities. Something is due to the fact that those windows were in use to the knowledge of the grantee when this covenant was made (18 N. Y., 109) ; also to the fact that, in obedience to this covenant, the grantee in *270 erecting Ms building left tMs strip of land unoccupied. If-need be, we thus get “ a clue to the intention of the parties” (1 Comst. 96). If this were an alternative obligation the question whether in building thus, the covenantor, for himself, and for those who might claim under him with notice, had not made his election, would deserve serious attention.
The question remains as to the office and effect of the second clause of this covenant.
The intention of the parties is to be respected as the controlling element. That intention is to be deduced from the terms employed, the subject m’atter, and the extrinsic circumstances.
The first clause, already noticed,—the undertaking not to do the thing—constitutes the agreement. The second, coming to the aid of the first clause, is collateral, an admonition against the breach.
It must be taken that the promise was to be kept; that that was the purpose and the expectation. But while a court of equity, with a degree of freedom not favored by the common law, in considering the nature of an engagement searches for the very right of the matter through the maze of forms, it leaves the parties, as at law, freely to make their own bargains and act upon them as made. When the intention is to substitute for the principal benefit the performance of some other act, that purpose should be indicated with reasonable certainty. But if the stipulation were merely in the alternative form, and a right of election conceded, it would remain to be determined in which of the parties that right resided.
In this instance the covenantor adds to Ms undertaking that for a violation of it he will pay fifteen hundred dollars liquidated damages. Had he, or, rather, have these defendants, standing, for the purposes of the present inquiry, in his place and stead, the right to determine whether the undertaking shall be observed or *271 the money paid % Have they the power to elect % I think not, and this, not only because the sum specified is inadequate, but because of the principle involved.
According to our great commentator on equity jurisprudence “it is against conscience that a party should have the right of election whether he would perform his covenant or pay damages for the breach of it” (1 Story Eq. Jur., § 717, a).
According to a later writer, “a court of equity does not regard a provision for the payment of a penalty as giving the party an election to break his contract upon paying for Ms violation of it, and will therefore compel a specific fulfillment of the agreement; and this applies as well where the appropriate remedy is injunction, as where it is specific performance” (3 Pars. on Cont., 5 ed., 356, note q).
Nothing less than a clearly manifested intention, or a provision in the contract vesting that right in the covenantor, would suffice. There should be something in its nature and effect equivalent to a release or satisfaction of the principal obligation. The agreement to pay a fixed sum for, or when there shall have been, a violation of the duty previously imposed or accepted is not a license to enter at will upon that wrongful act.
Judge Stout, in saying “but one cannot excuse himself from specific performance by paying the amount of stipulated damages named in. the contract ” (1 Eq. Jur., § 793, l), cites Long v. Bowring, 33 Beavan, 585. He accepts the doctrine of that case. To the like effect are the cases of Howard v. Hopkins, 2 Atkins, 371 ; Woodward v. Eyles, 2 Vern., 119 ; Bard v. Wood, 1 H. & M., 111 ; Coles v. Sims, 5 De G., M. & G., 1 ; Logan v. Wienbolt, 1 C. & F., 611 ; Dike v. Green, 4 R. I., 295 ; Dooley v. Watson, 1 Gray, 414 ; Gray v. Crosby, 18 Johns., 219.
The principle finds illustration in cases with us, as in England, where the principal covenant was followed by a *272 clause of forfeiture and the covenantor not allowed to take advantage of such clause, but required, at the election of the other party, to keep his engagement (1 Denio, 516 ; 11 Paige, 419 ; 1 Gray, 414 ; 2 Atkins, 371).
But, perhaps, none of the cases deserve more respect than that of French v. Macabe, 2 Drury & W., 269. It was there held upon principle and authority, that where the covenant is not to do a particular act, and a penalty or forfeiture is annexed to the doing of that act, the penalty does not authorize the party to do the act, and before it has been done the court will restrain him by injunction.
Is there be no such prevention, and the act be done contrary to the covenant, the clause as to damages, until then dormant, becomes the active part of the contract.
The general doctrine taught by the cases is that the specific agreement to do or not to do an act is the actual undertaking, standing in effect as if separate from the annexed clause as to damages, and must be observed. The exception to that general rule is when the covenant gives, or,, taken as a whole, shows a clear intent to give, the covenantor the option to do the one thing or the other as he may choose to elect.
We cannot thus read and apply this agreement. The damages are payable for a violation of the covenant. One who, having an election between two modes of action, selects and is ready to carry out either mode, is not subject to the imputation of violating his agreement. He is moving to the fair and legitimate discharge of his whole duty. In one of the cases_cited the liquidated damages were to be paid by the party who should “ refuse to fulfill” the contract, and the court distinguished such mere refusal from a stipulation to receive a certain sum instead of performance.
I find on the elaborate brief of the learned counsel *273 for the defendants, a reference to three special term decisions which are supposed to show that the doctrine of our supreme court differs from that prevailing in England, on the last branch of the case before me. I think I may say without presumption, that those decisions, so far as they tend to support such difference, are exceptional and not well considered. I confess to have had, at first, an inclination to attempt a critical analysis of the principal case, Vincent v. King.* I find on my preparatory notes nine well accepted authorities in conflict with it in point of principle, and as to the actual and implied duties of contractors. That collection, which might have been extended, was sufficient to admonish me to cease from my labors.
In the instances in which our equity jurisprudence differs from that of England, as, for example, in the doctrine as to the protection of ancient lights, the reasons for the departure are well understood. But upon questions of construction, election, and obligation, as involved in this case, there can be no material difference. The principles are the same in both countries.
The injunction must be continued.

 Vincent v. King, 13 How. Pr., 234 ; and see Barnes v. McAllister, 18 Id., 534 ; Nessle v. Reese, 19 Abb. Pr., 240 ; S. C., 29 How. Pr. 382, affirmed on other grounds in 49 Barb., 374.