Jacob M. Poage, Respondent, v. Wabash, St. Louis & Pacific Railway Company, Appellant.

Kansas City Court of Appeals, January 10, 1887.

1. Deeds—Covenants in Deed Poll—Effect of as to Action Upon—Case Adjudged.—A deed poll, when *accepted* by the

grantee, becomes the *mutual act* of the parties; and a stipulation on the part of the grantee, though it cannot be declared upon as his deed, yet, by the force of his *acceptance*, is a valid contract on his part, by which a right may be reserved or granted, or upon which a suit may be maintained. The form of the declaration in such action would be so akin to that for a breach of covenant, that, under our system of practice, there is no substantial difference in the quality of the obligation.

2. ———— NOTICE OF LIENS—VENDOR'S TITLE DEEDS AS AFFECTING SUBSEQUENT PURCHASER.—A purchaser is bound to take notice of all liens and encumbrances shown to exist by his vendor's title deeds. The effect is the same if the deeds are not recorded at all, if the party to be affected by notice claims and cannot make title without them.

3. ———— COLLATERAL COVENANT — WHAT IS—CASE ADJUDGED.—A collateral covenant (in a lease or conveyance) is such as appears to be foreign from the instrument, not touching the land or its value, or the value of the reservation, or of the term, but a distinct matter put in by the parties, which does not appear necessarily to influence the demise or grant. But a *dependent* covenant is such as requires something to be done or omitted *which respects the thing on which it depends;* in such cases it becomes appurtenant and runs with the land.

APPEAL from Daviess Circuit Court, HON. CHAS. H. S. GOODMAN, Judge.

*Affirmed.*

Statement of case by the court.

This is an action to recover damages for the failure of defendant, a railroad corporation, to maintain and keep in repair a certain ditch for the purpose of draining the lands of plaintiff. The facts, as disclosed by the pleadings and evidence, pertinent to this appeal, are substantially as follows: Prior to December 12, 1878, the plaintiff was the owner of lands situated in sections 34 and 35, township 61, of range 29, in Daviess county. There was a ditch constructed by plaintiff for the purpose of draining the lowlands on section 34, beginning near the west line of the northeast quarter of section 34, and running east toward the northeast corner of the section,

and thence into section 35, emptying into a lake on the north line of the section, as shown by the subjoined diagram :

Joseph Dilley Land.

Just east of the division line between the two sections there was a hill or bank, through which the ditch was dug. At the lower side of the hill, where the ditch emerged, the plaintiff had placed a gate, at the mouth of a flume running through the hill, constructed so as to be raised or let down, as emergency required. Beyond this lake runs Big creek, the water of which, in times of freshets, would overflow and run into said lake, which caused the waters to flow out of the lake up the ditch, so that, if not restrained, would overflow from the ditch and flood the lands of plaintiff in section 34. The office of the gate constructed at the mouth of said flume was to admit the waters, when raised, to flow off through the ditch into the lake, and when let down to prevent the water of the lake, when swollen by the overflow from Big creek, from running through the flume and backing up on to plaintiff's farm lands.

Some time prior to the date aforesaid, the plaintiff sold the land in section 35 to one Christie, and executed to him a deed of conveyance, reserving, however, the right to the ditch in question. This deed was never put to record, but was burned up. On the said twelfth day of December, 1878, Christie conveyed the land in section 35 to the Council Bluffs & St. Louis Railroad Company. And on the same day the plaintiff by deed conveyed the land in section 34 to the same company. This deed, which was put to record, contained the following provision :

"It is hereby agreed that said railway company shall build and maintain a good and lawful fence, with two crossings and sufficient cattle guards, one crossing at center line, and the other at east line of section thirty-four, and also maintain the present ditch, in order to drain that portion of his land north of bank in section thirty-four, township sixty-one, range twenty-nine, and if trestle is not absolutely necessary for the protection of the bank, the same shall be filled up."

In February following the said railroad company

conveyed said lands to the St. Louis, Kansas City & Northern Railway Company, and on the November following, in 1879, the latter road conveyed the same, by articles of consolidation, to the defendant railroad company.

The railroad track was built by the first named company, and the ditch in question was on the railroad right of way.

The deeds in question were drawn up by the agent of the railroad company, who was the engineer, after he made an inspection of the said ditch, and saw the office the flume and gate thereat performed in letting the water run out of the ditch into the lake, and checking the flow of water out of the lake up the ditch onto plaintiff's land in section 34.

The defendant neglected to keep said ditch in repair, and cut through the said hill and destroyed the flume and gate so as to admit the water in times of freshets, to flow out of the lake up the ditch on to plaintiff's farms in section 34, so that, in 1881, his crops were destroyed, or greatly injured, on the north side of said ditch, to his damage in the sum of nine hundred dollars, as shown by the evidence.

The petition set out the substance of the foregoing facts, laying the damages at twenty-five hundred dollars, for which he asked judgment. The answer tendered the general issue. The jury returned a verdict for plaintiff for nine hundred dollars. From this judgment defendant has appealed.

GEORGE S. GROVER, for the appellant.

I. The covenant sued on did not, and could not, extend to, or embrace, lands not owned by plaintiff at the time it was made, and which were not part or parcel of the demise. *Spencer's case*, 5 Coke, 16 ; 1 Sm. Lead. Cases, 138 ; *Norcross v. James*, 21 Cent. Law J. 455.

II. In the absence of any covenant, the defendant had a lawful right to obstruct or divert the flow of

surface water upon its own land. *Stewart v. City of Clinton*, 79 Mo. 603; 30 Am. & Eng. R. R. Cases, 103; *Jones v. Railroad*, 18 Mo. App. 251.

III.   The first instruction given for the plaintiff was erroneous.   It submitted *to the jury* the covenant sued on to be construed as a question of fact; and as to what construction the parties put upon the covenant at the time it was entered into; and an issue not made by the pleadings.   *Burriss v. Blair*, 61 Mo. 133; *Bunce v. Beck*, 43 Mo. 266; *Ely v. Railroad*, 77 Mo. 34; *Blakely v. Bernecke*, 59 Mo. 193.

IV.   The instructions asked by defendant and refused by the court, should have been given.   Cases cited *supra*.

No brief for the respondent.

PHILIPS, P. J.—From the instructions given by the court, and those refused, it is manifest that the court tried the case on the theory that the stipulation contained in the deed from plaintiff to the railroad company was in the nature of a covenant running with the land, which gave the plaintiff a right of action over against the defendant, a subsequent purchaser.   The defendant's instructions, refused, maintained the converse of this proposition.

There are two aspects of this case in which it may be considered.   First, in reference to the effect of the stipulation contained in the deed of plaintiff to the railroad company as to that part of the ditch in section 34, and second, its effect in reference to that portion in section 35.   Undoubtedly, had the plaintiff covenanted in his deed to maintain the ditch in section 34, for the use of the railroad company, it would have been an express covenant running with the land, which any subsequent purchaser, under the first grantee, could have enforced against the first grantor.   But as the stipulation sought to be enforced in this action is against the

grantee under a deed poll, not signed by the grantee, the question arises, is it in the nature of a covenant on his part, or is it to be regarded as merely a personal undertaking implied by the acceptance of the deed? In *Parish v. Whitney* (3 Gray, 516), it is held that such a stipulation is not to be considered as a condition on which the grant is made, nor has the reservation of a right of entry, and consequently it is not a covenant running with the land; citing in support *Plymouth v. Carver* (16 Pick. 183). I quite concur in the opinion of Smith, J., in *Burbank v. Pillsbury* (48 N. H. 481), in saying that this opinion in 3 Gray is hardly borne out by the case cited in 16 Pick. In the last named case the land was conveyed "on condition that they (the grantees) should become bound by sufficient bonds to make and maintain a portion of the highway which passed by such land." Pursuant thereto the grantees gave such bond. The action against the assignee of the grantees was founded on this bond. By accepting the bond it would clearly indicate that the grantor intended to rely solely on the personal security, which, being collateral, could scarcely, on principle, be said to be in the nature of a covenant running with the land. This case in 3 Gray is adverted to by the same court in the subsequent case of *Bronson v. Coffin* (108 Mass.) in such terms as to indicate that the court did not accept this ruling by Thomas, J., as of binding authority, citing the cases of *Kellogg v. Robinson* (6 Verm. 276), and *Burbank v. Pillsbury* (48 N. H. 475), as holding the opposite view.

It is somewhat difficult for the mind to reconcile the conclusion reached in *Parish v. Whitney*, with the language of Shaw, C. J., in *Newell v. Hill* (2 Met. 180) : "A deed poll, when accepted by the grantee, becomes the mutual act of the parties, and a stipulation on the part of the grantee, though it cannot be declared upon as his deed, yet, by the force of his acceptance, is a valid contract on his part, by which a right may be re-

served or granted, or upon which a suit may be maintained.''

In *Kellogg v. Robinson* (*supra*), the stipulation in a deed poll required the grantee to maintain a partition fence between the demised premises and the other land of the grantor. It was held to be a covenant on the part of the grantee running with the land. Phelps, J., observed that it (the stipulation) concerns the land, and is not collateral, is not to be questioned. It is not to be supposed that the parties intended Smith, the grantee, should be bound after parting with the land, nor that the obligation to maintain the fence should cease with a transfer of the estate. Besides, where is the distinction between a covenant to repair houses (the case put by Coke), and a covenant to maintain the fences? Where the covenant runs *in perpetuam* there can be no distinction.'' The stipulation to maintain the ditch is the expressed consideration and condition on which the conveyance was made ; and as between the original parties to the deed an action for a breach of this compact would certainly lie. The form of the declaration in such action would be so akin to that for a breach of a covenant that the difference is so technical as to show, under our system of practice, that there is no substantial difference in the quality of the obligation.

In *Burbank v. Pillsbury* (*supra*), the position is defended with much ability and authority that such a stipulation is a covenant running with the land. It is held that the case is in no wise distinguishable, in principle, from a devisee taking property under a devise subject to a burden imposed in favor of a third party ; which Shaw, C. J., in *Pike v. Brown* (7 Cush. 135), expressly asserts, ''stands on the same footing with a deed poll.''

In *VanRensseler v. Hays* (19 N. Y. 68), an annual rent reserved in the deed was held to be a covenant running with the land. And in *Atlantic Dock Company v. Louitt* (50 Barb. 135), the deed poll contained a stip-

ulation that the grantee, his heirs and assigns, would not erect, or permit upon the lots the erection of buildings, unless constructed of certain materials. The action for a breach was maintained against a subsequent purchaser. The court say: "The acceptance by Worcester (the grantee) of the conveyance containing the covenant, was equivalent to an express agreement on his part to perform the same, and this obligation affected the title of his grantees; *qui sentit commodum sentire debit et onus.*"

In *Norfleet v. Cromwell* (64 N. C. 1), it was held that an obligation imposed in a deed poll on the grantee to keep in repair a canal for the purpose of drainage to other lands of the grantor was a covenant running with the land. The court say: "The rights and obligations which they created were to be permanently attached to their respective lands; and, to be of any value, they must be. Their purpose would be defeated by holding that the obligation rested only in personal covenant, and were subject to be partially extinguished by a sale, or the death of any of the parties." These and other authorities commend themselves to my approval. So far, therefore, as any damages arising from the breach of the obligation imposed in the deed of plaintiff to the railroad company can be traced to its failure to maintain the ditch in section 34, he is clearly entitled to maintain this action.

II. But, as it is apparent from the instructions and the evidence that the verdict is dependent as well upon the right of the plaintiff to maintain the action for damages resulting from the defendant's failure to maintain that portion of the ditch in section 35, we are brought to encounter another question of greater embarrassment, and that is, whether the stipulation contained in the deed of plaintiff can be held to bind a subsequent purchaser of the land in section 35, through which the ditch runs? The contention of appellant is that, to maintain the action for breach of covenant

running with the land, the reservation or burden must be appurtenant to the thing granted, and not merely collateral to it. Reliance for this position is based on the rules laid down by Coke in the celebrated *Spencer case* (5 Rep. 16), one of which is as follows: "It was resolved in this case, if the lessee had covenanted for himself *and his assigns*, that they would make a new wall upon some part of the thing demised, that forasmuch as it is to be done upon the land demised, that it should bind the assignee; for, although the covenant doth extend to a thing to be newly made, yet it is to be made upon the thing demised, and the assignee is to take the benefit of it, and, therefore, shall bind the assignee *by express words*. So, on the other side, if a warranty be made to one, his heirs and assigns, by express words, the assignee shall take the benefit of it, and shall have a *warrantia chartæ*. But although the covenant be for him and his assigns, yet if the thing to be done *be merely collateral to the land*, and doth not touch or concern the thing demised in any sort, there the assignee shall not be charged. As, if the lessee covenants for him and his assigns to build a house upon the land of the lessor, which is no parcel of the demise, or to pay any collateral sum to the lessor, or to a stranger, it shall not bind the assignee because it is merely collateral, and in no manner touches or concerns the thing that was demised, or that is assigned over; and, therefore, in such case the assignee of the thing demised cannot be charged with it, no more than any other stranger."

Few questions arise more perplexing to the judicial mind than the practical application of these rules in practice. As said by that eminent judge, Cowan, in *Norman v. Wells* (17 Wend. 152): "There are certainly cases which seem startled at the comprehensive rules concerning assignable covenants, and which, therefore, seek to limit the number; and there are others which enable us still more clearly to see the legal portion be-

tween real and collateral covenants. It is not to be denied, however, that they still leave the application of old principles to new cases, a very nice exercise of the mind, and remaining in greater degree a matter for judicial discretion than almost any other of equal importance in the law of property.''

As each case must, to some extent, be controlled by its own peculiar facts, it is altogether important to a right determination of this case to comprehend its exact facts.

It is assumed by appellant's counsel that, as the deed from plaintiff to Christie was not put to record, the purchaser from the first grantee therein is not affected with notice of the reservation made of the ditch. This would, ordinarily, be correct, where the defendant, in claiming the title by adverse possession, or under a chain of title not requiring him to have recourse for its establishment to the existence of an undisclosed deed. But does it apply to the state of facts at bar, where the defendant holds title only through the fact of a deed having been made, which he is presumed to have in possession, or to have seen, or made inquiry about, when he purchased? It is a familiar rule of equity that a purchaser is bound to take notice of all liens and incumbrances shown to exist by his vendor's title deeds. *McRimmon v. Martin*, 14 Texas, 318; *Tiernan v. Thurman*, 14 B. Mon. (Ky.) 277; *Major v. Buckley*, 51 Mo. 227. In *Daughaday v. Paine* (6 Minn. 452), it is said: "It is contrary to reason and good sense that a party should be excused from knowing the contents, and the whole contents, of his title deeds. The purchaser has possession of these title deeds, to all intents and purposes, as fully as if they were delivered into his own hands." And in *Johnson v. Gwathmey* (4 Litt. (Ky.) 321), it is held that the effect is the same if the deeds are not recorded at all, if the party to be affected by notice claims, and cannot make title without them." This holding is recognized by our Supreme Court in *Orrick v. Dunham* (79 Mo. 178).

VOL. xxiv—14

This deed contained, according to the parol testimony of the plaintiff (the original having been burned up, thereby admitting parol testimony as to its contents), the reservation of "the right to ditch and the flume."

I take it that the reasonable construction to be applied to this language, employed by an unprofessional man, taken in connection with the supreme importance of this part of the ditch to the grantor, and the reason for the reservation is, that he excepted from the operation of the deed the land including the ditch. So that, when plaintiff conveyed to the railroad company he was the owner of the entire ditch in sections 34 and 35. Nor is the language of the stipulation contained in the deed from plaintiff to the railroad company subject to the construction sought to be placed upon it by appellant, that the duty of maintaining the ditch was limited to that portion of it in section 34. The grantee was to "maintain *the present ditch*, in order to drain that portion of his (plaintiff's) land north of bank in section 34", the obvious meaning and intent of which was, to impose upon the grantee, the duty and burden of maintaining the ditch, as it then existed, so as to accomplish the beneficial object of its construction, which was to drain and protect the plaintiff's farm in section 34. How could that be accomplished, if the ditch in its entire length to the lake was not maintained? The engineer of the railroad company was upon the ground and made an observation of the office the flume and water-gate performed at the bank, or hill, in section 35. It was designed to prevent the flow of water from the lake up through this flume, whereby plaintiff's land in section 34 was liable to be flooded and ruined. The language of the stipulation was apt enough to apply to the whole ditch, especially so when plaintiff owned that portion of it in section 35, and was contracting concerning something over which he had control. So we are brought face to face with the question, did that portion of the

ditch in section 35 so touch and affect the thing demised in plaintiff's deed to the railroad company as to make it an appurtenant thereto? By the ancient rule, laid down by Coke, it was sufficient to relieve the stipulation from the imputation of being merely collateral agreement, if the thing to be done by the grantee touched or concerned the thing demised "in any sort," and to render it a covenant running with the land.

Cowan, J., in *Norman v. Wells* (*supra*), construes the term collateral to mean: "Such a covenant in the lease as appears to be foreign from the demise, not touching the land or its value, or the value of the reservation, or of the term, or going to fix the amount of the rent; in short, a distinct matter which the parties have put in by the by, as they may do in respect to a horse or a cow, or a distinct farm, or some other matter, which, at least, does not appear necessarily to influence the demise." Now, as already stated that portion of the ditch in section 35 was so allied to that in section 34 as to make its preservation an absolute necessity to the plaintiff. The obligation imposed by the deed to maintain the ditch merely in section 34 would have been utterly fruitless to the plaintiff without a like safeguard as to that in section 35. It affected the sale of the land in section 34, and entered into the consideration as a condition thereof. It was so affixed to the thing demised as to make it inseparable.

Lord Ch. J. Wilmot, in *Bailey v. Wells* (3 Wils. 25), in commenting on the instance of the house to be built on other land, or to pay a collateral sum of money, put by Coke in the *Spencer case*, observed: "The reason why the assignees, though named, are not bound, is because the thing covenanted to be done has not the least reference to the thing demised. It is a substantive independent agreement, not *quodum modo*, annexed or appurtenant to the thing leased." And he regards that as a dependent covenant which requires something to be done or omitted, "*which respects the thing on which it*

*depends.*" In such case it becomes appurtenant, and runs with the land.

In *Burbank v. Pillsbury (supra)*, the deed poll conveyed certain premises, which were bounded on three sides by other lands of the grantor. The stipulation in the deed required the grantee, his heirs, and assigns, to make and maintain a fence around all of the premises, free from costs and expense to the grantor. This, it will be observed, bound the grantee to perform a service, as a burden, on other lands of the grantor than those conveyed. Yet it was held to touch and be appurtenant to the thing demised, and constituted a covenant running with the land.

In *Woolisroff v. Norton* (15 Wis. 198), the deed conveying a mill lot and a given number of square inches of water-power, contained a stipulation that the grantee should contribute a ratable share toward the expenses of maintaining the dam and race-way, proportionable to the number of square inches of water owned and used by him. Although the thing to be done by the grantee affected premises outside of the thing demised, it was held to be a covenant running with the land, and supported an action against a subsequent purchaser for damages, as for breach of contract.

The remark of Lord Cottingham, in *Fulk v. Maxhay* (2 Phillips Ch. 774), respecting the case of a grant of a piece of land used as a pleasure ground, and containing a stipulation that the grantee should maintain it in its present condition, and also build a fence, separating it from other lands of the grantor, and the attempt to escape this obligation by conveying to a third party, is most pertinent to the facts of this case : " If that were so, it would be impossible for one owner of land to sell part of it, without incurring the risk of rendering what he retains worthless."

The case of *Norfleet v. Cromwell* (64 N. C. 1), also presents a striking illustration of the application of the rule in question, where the thing to be done by the

grantee touches and concerns property outside of the granted premises. The undertaking of the grantee was to aid in repairing a canal used for draining the demised premises, and other lands of the parties to the agreement. The canal, just as this ditch, was an entirety. It would have been unavailing as such drain to the grantor as a servitude to his other lands had the canal not been maintained throughout its entire length. So it was held to be a covenant running with the land.

The possible objection, in view of remarks made in some of the ancient authorities, that this position may be obnoxious, as creating a perpetuity, is, in my opinion, of little force, because there was, and is, in being, a person capable of releasing the incumbrance.

III. These being the controlling and conclusive questions arising on the record, and the verdict on the unquestioned facts, being for the right party, it is unnecessary to notice other minor questions raised by counsel in their brief.

The other judges concurring, it follows, as the result of this opinion, that the judgment of the circuit court should be affirmed. It is so ordered.