Dickman, J.
In December, 1874, the Railway Company executed and delivered to James Hickey, the plaintiff in error, a deed, duly recorded thereafter, of three hundred and eighty-two acres of land, situate in Cuyahoga county, Ohio, and the grantee entered into possession of the granted premises. The deed contained the following condition and agreement:
“This conveyance is made subject to the condition that the said James Hickey, his heirs and assigns, shall make and maintain good and sufficient fences on each side of the right of way of the Lake Shore and Michigan Southern Railway as now located, * * * which condition and obligation shall be perpetually binding on the owners of the land. ’ ’
Subsequently to the conveyance, Hickey sold to different parties sundry parcels of the same land. The fences along the line of the railway, and in front of the several parcels thus sold becoming out of repair, the railway company requested each of the vendees and occupiers of the parcels of land purchased from Hickey, to repair and reconstruct the fences, in accordance with the condition and agreement in the deed from the Railway *46 Company. Upon the vendees and occupiers refusing and failing so to do, the company caused the fences to be repaired and rebuilt, in a manner sufficient to turn stock and animals as required by law, and commenced the original action to recover the cost and expense of such repairing and rebuilding.
The question presented is, whether the cost and expense so incurred should be borne by the plaintiff in error, the first grantee, or by his respective vendees along the lines of whose lands the fences have been repaired or rebuilt.
It was resolved in Spencer’s case, that the law would not annex the covenant to a thing which had no being at the time of the demise, as in the case of a covenant by a lessee to build a wall upon part of the land demised; and if the covenant should be entered into by the lessee for himself, his executors and administrators, without naming his 'assigns, the lessee, his executors or administrators would be bound and not his assignee. But, it was also resolved, that if the lessee had covenanted, for himself and his assigns, to make a new wall upon some part of the thing demised, forasmuch as it was to be done upon the land demised, it would bind the assignee; for although the covenant extended to a thing to be newly made, yet, as it was to be made upon the thing demised, and the assignee was to take the benefit of it, it should fpnd the assignee by express words. Spencer’s case, 5 Rep. 16, 1st and 2nd resolutions; 1 Smith Lead. Cas. 68. In other words, the covenants which are connected with the estate run with the land, and vest in point of benefit and liability in the assignee.
Nor is this principle to be restricted in its application to leases or deeds inter pa/rtes, executed by *47 both lessor and lessee, or grantor and grantee. Where a grantee accepts a deed, and goes into possession of the premises under it, he is bound by the conditions contained in the deed as effectually as if he had signed and sealed the instrument.' Although not executing the instrument, he should be deemed to have entered into an express undertaking to do what the deed says he is to do; and such undertaking or obligation imposed upon and assumed by the grantee, if not technically a covenant running with the land, is, nevertheless, an agreement of the grantee, evidenced by his acceptance of the deed, which might bind him and his personal representatives, and by express words, his heirs and assigns.
In Burbank v. Pillsbury, 48 N. H. 475, it was held that a clause in a deed poll to the effect that the grantee agrees for herself and for her heirs and assigns, that she and they would forever make and maintain a fence all around the granted premises, was of the same effect as an express covenant, signed and sealed by the grantee; that it would run with the land; that it created an incumbrance upon the land; and, by implication, it was recognized that a subsequent grantee would be liable to the original grantor in an action of assumpsit for non performance of the stipulation. A decision substantially similar was rendered in Kellogg v. Robinson, 6 Vt. 276.
And, in The Georgia Southern Railroad v. Reeves, 64 Ga. 492, the grantor, in consideration of $25.00, and of the building of the railroad, conveyed to a company, its successors or assigns forever, in fee-simple, the right-of-way 'through his land, and added in the deed the words: “It is hereby agreed and understood a depot and station is to be *48 located and given to said Reeves, on the land or strip above conveyed, to be permanently located for the benefit of said Reeves and his assigns, and to be used for the general purposes of the Railroad Company. ” It was held, that the grantee, by accepting such deed, entered into a covenant to comply with its terms, and this covenant ran with the land and became obligatory upon any second company which became the purchaser, under proper legal direction, of the rights, privileges, franchises and property of the former. See also, Countryman v. Deck, 13 Abb. (N. Y.) N. Cas. 110.
If the conditions, stipulations, or covenants in a deed poll may thus run with the land, and bind the first grantee and' subsequent purchasers from him, why, it is inquired, should not the plaintiff in error, as well as his grantees, be holden to perform the condition and obligation contained in the deed from the Railway Company? ' If the conveyance had been made subject only to the condition that, “James Hickey, his heirs and assigns” shall make and maintain good and sufficient fences on each side of the right of way of the railway, the Railway Company, we think, might, at its election, pursue either the original grantee or his vendee, or both, for payment. But the conveyance contains the further provision, that such “condition and obligation shall be perpetually binding on the'owners of the land. ” This provision cannot be regarded as meaningless and without design. In the construction of deeds, the object of all rules is to ascertain the intent of the parties. And in construing the words of a grant, of covenant, of qualification, condition, restraint, exception or explanation, every word should be presumed to have been used for some purpose, and should be deemed to have some *49 force and effect, if it can have. Devlin on Deeds, sec. 840; Salesbury v. Andrews, 19 Pick. 250, 252.
In the case before us, the Railway Company conveyed the land in fee, and as part consideration, imposed a condition for making and maintaining fences, which was to be “perpetually binding on the owners of the land. ” The meaning of the condition, we think, was, to place upon 'Hickey an obligation to make and maintain the fences only during the time he was the owner of the land. At his death, his heirs, upon succeeding to the ownership, would be held to make and maintain the fences while their ownership lasted. If he or his heirs or devisees should sell the land, the assignees would likewise be held while they continued to be owners — the obligation thus running with the land. Manifestly, it was not Hickey’s intention to assume an obligation in perpetuara, and after having sold and conveyed the premises in fee, to remain bound for life, and his heirs to be bound after his death, to build and keep up the fences between the right of way and the land sold. And in getting at the intention of the Railway Company, the obvious inference would be, that the company would naturally provide for a recourse to those who might own the land at the time the fences needed repairing or rebuilding, rather than to its grantee and his heirs, who might perhaps’ at the time be dead, or unable to be found. We cannot but conclude that the company intended when the land was conveyed, to trust to the land and its owners, for a performance of the condition contained in the deed, and not to its grantee after he ceased to be the owner. The fact that the company imposed the condition, that the grantee and “his assigns” should make and maintain the fences, and added thereto, that *50 the condition or obligation should be perpetually binding on “the owners of the land,” would indicate an intention to make ownership the test as to who should be bound to perform the condition in the deed.
In Worthington v. Hewes, 19 Ohio St. 66, there was a demise of certain real estate to the lessee and his assigns, for ninety-nine years, renewable forever. The lease provided that the rent was to be fixed by a reappraisal of the premises every fifteen years. The stipulation in the lease as to the mode of appointing appraisers, was held to be a covenant running with the land, and not a collateral covenant. For all substantial purposes, the estate was treated as a leasehold estate in name and in form only. The lessor, in effect, having-parted at' once with his entire estate, the lessee was deemed to have taken in form a chattel, but in fact an estate in fee. The liability of the lessee for rents was regarded as simply a question of intention; and it was held that, after an unconditional assignment by the lessee, he was not liable for future rents, and had no right to interfere in the appointment of appraisers, which was a matter to be adjusted, not by the original parties to the lease, but by their assignees. The decision, though not altogether decisive, is, in a measure, forcibly illustrative of principles involved in the case at bar.
The judgment of the circuit court, in our opinion, should be reversed, and that of the court of common pleas affirmed.

Judgment accordingly.