**James D. and Edna I. Albright v. John A. and Cheryl Fish, William and Marion C. Miller, Ernest Paul and Marlene Sachs and Peter R. and Mary Miles Teachout**

[394 A.2d 1117]

No. 36-78

Present: **Barney, C.J., Daley, Larrow, Billings and Hill, JJ.**

Opinion Filed September 11, 1978

Motion for Reargument Denied October 31, 1978

*Norris H. Hoyt, Jr.,* and *Peter R. Teachout,* Norwich, for Cross-plaintiffs Sachs and Teachout.

*Garfield H. Miller* of *Black and Plante,* White River Junction, for Cross-defendants Miller.

**Billings, J.** This cause centers around a series of transactions made concerning the Robinson Farm in Hartford, Vermont. Each of the parties now owns or once owned a part of this property, and the suit was commenced because of an alleged breach of a restrictive covenant that bound one of the parcels.

In November, 1971, the common grantor, Reilly and Little, purchased the Robinson Farm. At that time, the farm consisted of approximately 72 acres of land lying north of Jericho Road and two separate, isolated parcels of approximately six acres each, lying south of Jericho Road. One of the six acre parcels was sold by Reilly and Little to the Fisks in January, 1972; the second was sold to the Hansens in June, 1972. Neither deed contained the restrictive covenant here at issue.

The tract northerly of Jericho Road was surveyed and subdivided into three parcels for sale. In February, 1972, Reilly and Little conveyed a parcel, described in the deed as containing 20 acres, more or less, to defendants Miller. This parcel subsequently was determined to contain 18.9 acres. In May, 1972, Reilly and Little sold the remaining two parcels of 15 acres and 38 acres to the Wells. The deeds to the Millers and to the Wells contained the following covenant here at issue: "The premises herein conveyed shall not be subdivided into lots of less than 10 acres." Each deed further provided that the covenant "shall run with the land and be binding on the Grantees, their heirs and assigns for a period of 50 years from the date of the within deed."

At some point, probably in early 1973, the Millers decided to subdivide their parcel into two lots for sale, one of 8.9 acres and the other of 10 acres. They obtained a quitclaim deed from their original grantors dated June 8, 1973, purporting to release the Millers from the requirements of the 10 acre minimum lot restriction. Thereafter, the Millers conveyed the 10 acre parcel to defendants Fishes in September, 1973. The quitclaim deed was then recorded on October 24, 1973, indexed

under Reilly and Little as grantors and the Millers as grantees.

In November, 1974, the Wells conveyed their 15 acre parcel to defendants Sachs. Then, the Millers sold the 8.9 acre parcel to plaintiffs Albrights in January, 1975. Finally, the Wells conveyed the 38 acre parcel to defendants Teachouts in July, 1975. Except as noted, each of the transfers was by warranty deed. While the Teachouts' deed contained the retrictive covenant here at issue, the Sachs' deed did not.

In August, 1975, the Sachs and the Teachouts notified the Albrights of their position that the conveyance of the 8.9 acre lot violated the restrictive covenant and that any construction would be at the Albrights' own risk. In December, 1975, the Albrights filed suit in the Windsor Superior Court requesting in the alternative either that the Millers be compelled to reacquire the land and compensate the Albrights for expenses incurred in relation to it, or that declaratory relief be given that the Albrights could construct a dwelling on the disputed property plus monetary damages against the Sachs and the Teachouts to compensate for the costs and expenses caused by the delay.

In June, 1976, the Sachs and the Teachouts entered into a settlement agreement with the Albrights. Pursuant to the settlement, the Albrights conveyed undivided one-half interests in the 8.9 acre lot to the Sachs and to the Teachouts. Also, the Albrights assigned to the Sachs and the Teachouts all claims they might have with regard to the 8.9 acre parcel. The settlement further provided that the intent of the parties was that other claims of the parties to the agreement would not be affected by the settlement. Subsequently, the Albrights' complaint was dismissed, and the Sachs and the Teachouts (hereinafter the cross-plaintiffs) brought a cross-claim against the Millers (hereinafter the cross-defendants). In the cross-claim, the cross-plaintiffs claimed a breach of the restrictive covenant allegedly running with the land in their favor and sought both compensatory and exemplary damages. Also, the cross-plaintiffs alternatively urged the assigned rights of the Albrights seeking recision of the Miller to Albright conveyance and all injunctive relief and damages to which the Albrights would have been entitled.

At a conference with the trial court in June, 1977, the parties and the court agreed that, since the issue of liability was one of law, not fact, the liability issue would be submitted to the court on stipulated facts and written briefs. Also, it was agreed that the trial would be bifurcated, with the question of damages reserved to a subsequent hearing should liability be found.

In January, 1978, the trial court rendered judgment for the cross-defendants. The court concluded that, although the quitclaim release from Reilly and Little to the cross-defendants was not in the chain of title of the cross-plaintiffs, the quitclaim release and the absence of any reference to the restrictive covenant in the deed from the Wells to the Sachs "would put any title examiner on notice that there might be something unusual involved in the subdivision." Secondly, the court found as a matter of law that there was no common scheme or plan of development creating reciprocal rights among all the landowners because two of the four parcels conveyed by the common grantor contained no covenants and were less than 10 acres. The court concluded that absent such a common plan the restrictive covenant was not strictly enforceable. The court rejected the cross-plaintiffs alternate claim for damages on the grounds it was "unreasonable and unconscionable under the circumstances."

On appeal, the cross-plaintiffs have asked for reversal on the ground that the cross-defendants breached a covenant running in favor of the 15 acre and the 38 acre parcels held respectively by the cross-plaintiffs and for a hearing on the issue of damages caused by that breach. The cross-plaintiffs have not asserted their claim based on the assigned rights gained from the Albrights here, and thus we need not decide the correctness of the trial court's disposition of that claim. The issue for decision is whether the cross-plaintiffs may recover damages in their own right on the facts as stipulated by the parties. Although the cross-defendants are the original covenantors to the restrictive covenant at issue, the cross-plaintiffs are successors in title to the original covenantees. Thus, for the cross-plaintiffs to have standing to sue for breach of the covenant, the benefit of the covenant must run in favor of the 15 acre and the 38 acre parcels of land owned

by the cross-plaintiffs. For the cross-plaintiffs to recover damages, the covenant must "run at law."

■ For a restrictive covenant to run at law, four elements are necessary. First, the covenant must be in writing. Secondly, the parties must intend that the covenant run with the land. Thirdly, the covenant must "touch and concern" the land. Lastly, there must be privity of estate between the parties. See *Kellogg* v. *Robinson,* 6 Vt. 276 (1834); 5 R. Powell, The Law of Real Property ¶¶ 670–686 (rev. ed. 1977).[1]

In the instant case, the deed from Reilly and Little to the cross-defendants contains the restrictive covenant, which provides:

> The above-described premises are hereby conveyed subject to the following covenants, conditions, and restrictions, which shall run with the land and be binding on the Grantees, their heirs and assigns for a period of 50 years from the date of the within deed:
>
> 1. The premises herein conveyed shall not be subdivided into lots of less than 10 acres.

The covenant clearly expresses an intent that the burden established shall run with the land; no such intent is expressed unequivocally with regard to the benefit, however, and we must look to the surrounding circumstances to determine whether that intent can be inferred.

■■ Some promises are so intimately connected with the land as to require the conclusion that the necessary intention for the running of the benefit is present absent language clearly negating that intent. Examples are covenants to repair a building, or to plow up a meadow, or to refrain from build-

---

[1] When the plaintiff seeks to strictly enforce the covenant, as by injunction, rather than to seek damages for its breach, the requirement of privity of estate is replaced by one of notice, see *McDonough* v. *W. W. Snow Construction Co.,* 131 Vt. 436, 306 A.2d 119 (1973); *Welch* v. *Barrows,* 125 Vt. 500, 218 A.2d 698 (1966); *Latchis* v. *John,* 117 Vt. 110, 85 A.2d 575 (1952); *Queen City Park Association* v. *Gale,* 110 Vt. 110, 3 A.2d 529 (1938), and the touch and concern requirement is somewhat more easily met. See *Queen City Park Association* v. *Gale, supra.*

ing on land. See *Kellogg* v. *Robinson, supra,* 6 Vt. at 279; 5 R. Powell, *supra,* ¶ 673, at 169, n.42. The covenant in the instant cause also belongs in this category. Additionally, factors are present here that are traditionally considered strong evidence of an intention that the benefit shall run with the land. The covenantees, Reilly and Little, retained adjacent land at the time the covenant was made. Also, two of the conveyances of property north of Jericho Road contained the covenant, while in the third conveyance the covenant was contained in the chain of title, evidencing a common scheme as to the property. The covenant further renders the lands of the cross-plaintiffs somewhat more valuable by insuring that open spaces remain surrounding it. See 5 R. Powell, *supra,* ¶ 673, at 169. The intent element necessary for the benefit to run with the land is present on these facts.

Because the covenant is bound up with the use of the land and benefits the cross-plaintiffs in their capacity as landowners, the touch and concern requirement is satisfied. See *Kellogg* v. *Robinson, supra,* 6 Vt. at 279. Also, because both horizontal privity of estate and vertical privity of estate are present on these facts, the privity of estate requirement is, of necessity, met. See *id.* at 282; 5 R. Powell, *supra,* ¶ 674, at 176–78. Therefore, the cross-plaintiffs, in their capacity as owners of the 15 acre and the 38 acre parcels respectively, have standing to sue the cross-defendants for damages for breach of the restrictive covenant.

The cross-defendants seek to defend the trial court's judgment by claiming that the quitclaim release from Reilly and Little was effective to authorize the offending subdivision. We disagree. The release was executed June 8, 1973. Cross-plaintiffs' predecessors in title, the Wells, acquired the benefited land from Reilly and Little in May, 1972. A release extinguishes only the estate of the releasor. *Id.* ¶ 683, at 225. The release could not operate to divest the beneficial interest to enforce the covenant that had passed to the Wells in May, 1972. Only a release by the Wells could effect that result.

The cross-defendants next seek to save the trial court's judgment by arguing that the covenant has been extinguished

by merger. They claim that the acquisition by the cross-plaintiffs of the 8.9 acre parcel extinguished the covenant because there are no parcels of less than 10 acres currently existing. This they claim has extinguished the cross-plaintiffs' claim.

The doctrine of merger operates when the same person becomes owner of both the benefited and the burdened land. *Id.* ¶ 683, at 224. Here the benefited land consists of two parcels, one owned by the Sachs, one by the Teachouts. The burdened land also consists of two parcels, one owned by the Sachs and the Teachouts together, the other by the Fishes. Not even partial unity of ownership exists. Moreover, even if the doctrine of merger were applicable, we fail to see how it would extinguish the cross-plaintiffs' claim, which is based on an already existing breach of the restrictive covenant.

The remaining arguments raised by the parties either find no support in the stipulated facts or are unnecessary to resolve in view of our disposition of this cause. The cross-plaintiffs are entitled to a judgment on their claim based on their status as owners of the 15 acre and the 38 acre parcels.

*The judgment for the cross-defendants is vacated, and judgment is entered for the cross-plaintiffs as provided herein. The cause is remanded for determination of the issue of damages.*

## On Motion for Reargument

**Per Curiam.** Subsequent to the handing down of the opinion, appellee, by motion for reargument, called to our attention a statement relative to the containing of the covenant in the conveyances north of Jericho Road which was not correctly stated. The opinion was recalled and the error duly corrected.

Other than the foregoing, the motion presented no points which were overlooked, misapprehended or not covered in the opinion. The revision does not change the result and the entry is not affected. No ground for reargument appears, and the motion is denied. See *State* v. *O'Connell,* 135 Vt. 182, 185, 375 A.2d 982, 984 (1977).

*Motion for reargument denied.*