Marcia M. Rogers, Herbert & Mary Taylor, Edwina Bard, Rudolph & Dorothy Bondone, Brian & Janet Maroney, Michael & Mary Walsh, et al. v. Gerald E. & Kay F. Watson, State of Vermont Agency of Natural Resources, and Town of Bennington v. Charles M. & Hazel L. Wilkinson

[594 A.2d 409]

No. 88-391

Present: Allen, C.J., Peck, Gibson, Dooley and Morse, JJ.

Opinion Filed May 17, 1991

*Lon T. McClintock* of *Offices of Thomas H. Jacobs,* Bennington, for Plaintiffs-Appellees.

*Timothy L. Taylor* and *William H. Meub* of *Kelley, Meub, Powers & English, Ltd.,* Rutland, for Defendants-Appellants Gerald and Kay Watson.

*Jeffrey L. Amestoy,* Attorney General, and *Mark J. Di Stefano,* Assistant Attorney General, Montpelier, for Defendant-Appellee State of Vermont Agency of Natural Resources.

**Dooley, J.** This action began with a complaint by adjoining landowners for an injunction requiring defendants, Gerald and Kay Watson, to remove a mobile home they had placed on part of their land. The complaint alleged that the mobile home violated a restrictive covenant applicable to defendants' land. It also joined the Vermont Agency of Natural Resources, seeking to require it to enforce certain subdivision regulations that were allegedly violated by the presence of the mobile home. The Agency cross-claimed against defendants to enforce the regulations. The trial court found for the plaintiffs and the Agency and granted an injunction requiring removal of the mobile home. It also imposed a fine for violation of the regulations. Defendants appeal, and we affirm.

In 1963, defendants purchased a lot in Bennington from Olaf and Edwina Bard, the first division of a 200-acre parcel into a

residential development. There are no restrictions in this deed. Thereafter, the Bards sold off other parcels, and each deed, except one to the Bards' son and daughter-in-law, contained a covenant similar to the following:

No mobile home, trailer, or other similar structure shall be placed or maintained on said premises without the prior approval in writing of the grantor herein or his heirs, executors, administrators or assigns.

In 1977, Edwina Bard (Mr. Bard having died) sold to Charles and Hazel Wilkinson a lot adjacent to that owned by defendants. The deed contained the above restrictive covenant prohibiting the placement of a mobile home on the land. In 1981, defendants purchased part of this lot from the Wilkinsons. The deed did not mention the restrictive covenant.

Because the Wilkinsons were subdividing their land, the transfer to defendants required a permit from the Agency of Natural Resources unless deferred because defendants waived development rights. Defendants applied for and received such a deferral after agreeing that they would not construct or erect any structure, "the useful occupancy of which [would] require the installation of plumbing and sewage treatment facilities" on the lot without first obtaining a permit. The deed contained this restriction.

In October 1985, defendants decided to place a mobile home on the lot they had acquired from the Wilkinsons. Their son-in-law was afflicted with a brain tumor, making it necessary for them to house him, their daughter, and two infant grandchildren. For this purpose, they purchased the mobile home, poured a slab foundation, and began to construct the septic system when they became aware that they might need a permit from the Agency. Because of soil conditions, the Agency denied a permit for a septic system. Nevertheless, defendants completed the sewage system but did not connect it within the home. Water was available from defendants' nearby house but was not connected. The mobile home does have heat and electricity. Defendants' daughter and son-in-law use the mobile home as their home, but they go to defendants' home for all living needs requiring water or sewage.

Plaintiffs in the original action are neighboring landowners, at least some of whom purchased land from the Bards after the

sale from the Bards to the Wilkinsons. Edwina Bard was also a plaintiff. She died while the action was pending and was replaced by the executor of her estate.

The trial court found that the restrictive covenant ran with the land, applied to defendants, and could be enforced by plaintiffs. It further found that defendants' actions in placing the mobile home on the land required a permit under the deferral language and the applicable Agency regulation. It found the Agency regulation to be valid.

On appeal, defendants argue that the trial court erred in granting plaintiffs an injunction because there was no showing that either the benefit or the burden of the restrictive covenant was intended to run with the land. As to the Agency, they argue that the placement of the mobile home on the land without connecting the water and sewage does not require a permit under Agency regulations. Alternatively, they argue that if the regulation is applicable, it is invalid because it is unconstitutionally vague, is beyond the Agency's statutory authority and represents an excessive delegation of legislative power.

■ ■ We begin with defendants' argument that it was improper to enforce the restrictive covenant against them. In order to enforce a restrictive covenant against an owner other than the original covenantee, the covenant must run with the land. *Chimney Hill Owners' Assoc. v. Antignani*, 136 Vt. 446, 454, 392 A.2d 423, 428 (1978). At law, a covenant will run with the land if four requirements are met:

> First, the covenant must be in writing. Secondly, the parties must intend that the covenant run with the land. Thirdly, the covenant must "touch and concern" the land. Lastly, there must be privity of estate between the parties.

*Albright v. Fish*, 136 Vt. 387, 393, 394 A.2d 1117, 1120 (1978). In equity, the requirements are relaxed in part: the touch and concern requirement is "somewhat more easily met" and the privity requirement "is replaced by one of notice." *Id.* at 393 n.1, 394 A.2d at 1120 n.1.[1] Because this is an action for injunctive

---

[1] We recognize that *Albright* has been criticized for maintaining an artificial historical distinction between law and equity in this area. See Note, *Ver-*

relief, we are dealing with the enforcement of an equitable servitude rather than a restrictive covenant at law.

■ Defendants concede that the first, third, and fourth requirements are met but argue that there is inadequate evidence of intent to have the restriction run with the land. The intent can be implied as well as expressed. See *McDonough v. W. W. Snow Constr. Co.*, 131 Vt. 436, 441, 306 A.2d 119, 122 (1973). Intent can also be shown by extraneous circumstances. See *Welch v. Barrows*, 125 Vt. 500, 504, 218 A.2d 698, 702 (1966). In some instances, the "promises are so intimately connected with the land as to require the conclusion that the necessary intention for the running of the benefit is present absent language clearly negating that intent." *Albright*, 136 Vt. at 393, 394 A.2d at 1120.

■ Defendants' main argument is that there is insufficient evidence that a benefit or burden was intended to run with the land, and consequently, the restriction cannot be enforced against them. We will begin with the burden side of the equation. The restriction prohibits the placement of a particular type of structure on defendants' land. This is the sort of restriction "so intimately connected with the land" that we find the "necessary intention . . . absent language clearly negating that intent." *Id.*

Extraneous factors also point strongly to the intent to have the burden run with the land. The Bards retained adjoining or nearby land. The inclusion of the restriction in most, if not all, other deeds from the Bards shows an intent to create a common development scheme even if it was implemented imperfectly. See *id.* at 394, 394 A.2d at 1120.

■■ For the above reasons, we hold that the trial court was correct in its conclusion that the burden of the restrictions ran with the land and could be enforced against defendants. Although defendants make extensive arguments that the benefit

mont's *Law of Promises Running With the Land: Formal Restraints on a Practical Doctrine*, 6 Vt. L. Rev. 437, 464 (1981). The present case does not require us to consider the distinction because defendants argue only that no intent to run with the land is present—an element required both at law and in equity.

did not run with the land, we need not reach these arguments. The covenant specifically requires "the prior approval in writing of the grantor herein or his heirs, executors, administrators or assigns." Although the grantor is now deceased, the executor has joined this action and can enforce the covenant as a named beneficiary of it. We are unpersuaded by defendants' argument that the executor has no power to enforce the covenant because the real property went directly to the heirs. It is sufficient that the executor is specifically named in the covenant. The trial court did not err in granting the injunction to enforce the restrictive covenant.

The remaining three issues involve the trial court's conclusion that placing the mobile home on the lot required a permit from the Agency of Natural Resources. Defendants first argue that the court misconstrued the applicable Agency regulation. The regulation provides:

> No structure or building, the useful occupancy of which will require the installation of plumbing and sewer treatment facilities may be constructed or erected on a lot subject to a deferral of permit, unless the lot owner first obtains a permit as required by these subdivision regulations.

Agency of Natural Resources, Environmental Protection Rule § 3-06, 5 Code of Vt. Rules, Rule 1203301, at 020 (1982). Defendants concede that the mobile home is a building but argue that the useful occupancy does not require installation of either plumbing or water facilities as shown by the actual use of the home without these facilities.

We start by emphasizing that absent compelling indications of error we must accept the interpretation of administrative regulations by the agency responsible for their implementation. *In re Vitale*, 151 Vt. 580, 582, 563 A.2d 613, 615 (1989). As the United States Supreme Court stated in *Gardebring v. Jenkins*, 485 U.S. 415, 430 (1988), "when it is the Secretary's regulation that we are construing, . . . we are properly hesitant to substitute an alternative reading for the Secretary's unless . . . compelled by the regulation's plain language or by other indications of the Secretary's intent at the time of the regulation's promulgation." See also *United States v. Larionoff*, 431 U.S. 864, 872 (1977) (administrative interpreta-

tion of regulation entitled to "'controlling weight unless it is plainly erroneous or inconsistent with the regulation'") (quoting *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945)).

For three reasons, the Agency's reading that the regulation applies in this instance is not plainly erroneous. First, as the Agency emphasizes, the regulation establishes an objective standard. Thus, the question is not whether defendants are using or occupying this particular mobile home without the need for water and sewage facilities. Instead, it is whether a mobile home of the type involved here can be usefully occupied without sewer or water facilities. We have to answer that question in the negative unless we are going to allow all mobile home construction, and probably all home construction, to escape permitting because it is possible to use a home without water and sewage facilities. At the extreme, even a large home can be used solely for storage, but it would be unreasonable to construe this regulation as governed by the theoretical extremes. If we change the nature of the structure to eliminate components normally needed for full-time occupancy, such as a kitchen and a bathroom, we will reach a point where possible use reaches a practical probability. We are far from that here.

■ Second, an alternative interpretation, premised on case-by-case permitting requirements, imposes an impracticable enforcement burden on the Agency. The Agency would be unable to require a permit for a mobile home until it determined that there were sewer and water connections and that these facilities were actually being used. Not only would the enforcement burden created by such an interpretation be unreasonable, it is highly unlikely that an agency responsible for drafting the regulation would ever intend to assume such an unreasonable burden.[2] In construing a statute or regulation, one of our primary concerns is to implement the intent of the adopting body.

---

[2] In this case, as discussed *infra*, the regulation was actually drafted by the Board of Health for enforcement by the Health Department, and the enforcement burden was shifted to the Agency of Natural Resources. The fact that the agency now responsible for implementation is different from the drafting agency does not change the point.

■ Third, we are dealing here with an exemption from a general requirement to obtain a permit in the case of certain subdivisions of land. We typically construe exemptions narrowly so they do not undermine the general rule. See, e.g., *Kingsland Bay School, Inc. v. Town of Middlebury*, 153 Vt. 201, 206, 569 A.2d 496, 499 (1989) (tax exemptions strictly construed). Thus, if we allow loopholes to extend permit deferrals indefinitely, developers will be much less likely to obtain permits at the time of subdivision, which is when water and sewer issues are better resolved.

■ We recognize that countervailing considerations support defendants' interpretation. But, as the United States Supreme Court noted in *Larionoff*, we cannot tarry over "the various ambiguous terms and complex interrelations of the regulations." 431 U.S. at 872. Whether, if writing on a blank slate, we would interpret the regulation as the Agency has is beside the point. Our holding is only that the Agency's interpretation is not plainly erroneous, and there is no compelling indication of error.

■ Defendants' second argument is that the regulation is so vague that ordinary persons cannot understand what conduct is prohibited, and arbitrary and discriminatory enforcement is encouraged. See *Kolender v. Lawson*, 461 U.S. 352, 357 (1983) (applying void-for-vagueness standard to penal statute). In evaluating this argument, we must first recognize that we are dealing with an area where some imprecision and generality is necessary and inevitable. Our void-for-vagueness test is less strict where the regulation is economic and the landowner can seek clarification of its meaning or resort to administrative processes. *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498 (1982). The test is also less strict because the regulation does not threaten to inhibit the exercise of constitutionally protected rights. *Id.* at 499.

■ We must look at the regulatory scheme in its entirety. Thus, it is important that defendants had the opportunity to clarify their responsibilities and did not use it. See *Arnett v. Kennedy*, 416 U.S. 134, 160 (1974) (in government employment termination case for "such cause as will promote the efficiency of the service," availability of agency general counsel to inform

employee of agency's interpretation was important to rejecting vagueness challenge). Here, the trial court found that when defendants learned from the Agency that they could not obtain a permit, they proceeded unilaterally to try to eliminate the need for one. The court also found that the Agency representatives did not tell defendants that they could proceed with the installation of the mobile home if they did not connect the water and sewage facilities.

We conclude that the regulation, as we have construed it, is sufficiently precise that an ordinary person using the means available and ordinary common sense can understand the meaning and comply. See *Brody v. Barasch*, 155 Vt. 103, 111, 582 A.2d 132, 137 (1990) (not necessary to "detail each and every act or conduct that is prohibited" as long as language "conveys a definite warning as to proscribed conduct when measured by common understanding and practices"). The regulation is not void for vagueness.

Defendants' third argument is that the regulation intrudes on the exclusive powers of the Legislature because it exceeds the statutory authority and gives too much discretion to Agency officials. The short answer to the first part of defendants' argument lies in the applicable statutory authority. The regulations involved here were first adopted by the Vermont Board of Health in 1969. See Vt. Board of Health, Chapter 5, Subchapter 10 (adopted December 18, 1969). Section 1218(a) of Title 18 provides that the 1969 subdivision regulations "are ratified and given full force and effect as of that date." The effect of this language is to enact the regulations as if they were legislation. See *In re Spencer*, 152 Vt. 330, 336, 566 A.2d 959, 962 (1989).

The deferral language at issue here is contained in an amendment to the original rules. Section 1218(b) of Title 18 specifically gave the Board of Health (later transferred to the Secretary of the Agency of Natural Resources) "the power to amend or repeal the regulations referred to in subsection (a)." Thus, there can be no doubt that the amendment was within the Board's power.

The second part of defendants' argument is that the delegation of power to adopt the regulations is so broad that it

amounts to an unconstitutional delegation of legislative power. Although the Legislature may delegate the power to administer a law to an administrative agency, the delegation may not be "unrestrained and arbitrary." *State v. Auclair*, 110 Vt. 147, 163, 4 A.2d 107, 114 (1939). As a result, the delegation statute must contain a "basic standard—a definite and certain policy and rule of action for the guidance of the agency created to administer the law." *Id.* (quoting *State ex rel. State Board of Milk Control v. Newark Milk Co.*, 118 N.J. Eq. 504, 522, 179 A. 116, 125 (1935)); see also *Vincent v. Vermont State Retirement Board*, 148 Vt. 531, 535, 536 A.2d 925, 928 (1987); *State v. Chambers*, 144 Vt. 234, 239, 477 A.2d 110, 112–13 (1984). The regulations were originally promulgated pursuant to the Board of Health's power to make rules and regulations "to prevent the pollution and to secure the sanitary protection of . . . waters." 18 V.S.A. § 1203 (later repealed). The rulemaking power of the Board extended "to all matters relating to the preservation of the public health." 18 V.S.A. § 102. These statutes provide a sufficient standard or policy to guide the Agency's actions.

Moreover, this argument is basically futile. As discussed above, the original regulations have been ratified by the Legislature; no unlawful delegation argument can be made with respect to them. Those regulations required a permit in all instances with no ability to defer it. The deferral language, challenged here, benefited the landowner by allowing the permit requirement to be moved into the future. If we were to find the deferral language invalid because of a lack of standards in the power to amend the regulations, the effect would be to restore the original, ratified regulations that did not allow any deferral of permits. In any event, defendants would need a permit.

*Affirmed.*