**STATE OF VERMONT**

**ENVIRONMENTAL COURT**

Appeal of James Ghia   }
}
}
}   Docket No.  31-2-03
}   Vtec
}
}
}

<u>Decision and Order</u>

Appellant James Ghia appeals from a decision of the Development Review Board (DRB) of the Town of Ludlow, affirming the Administrative Officer=s[1] decision that Appellant= s 1985 zoning permit had lapsed. The appeal to this Court is an on-the-record appeal pursuant to 24 V.S.A. ' 4471(a) and V.R.C.P. 76(e)(3), as the Town of Ludlow has adopted and implemented the procedures necessary for such appeals. Appellant is represented by Martin Nitka, Esq.; the Town[2] of Ludlow is represented by J. Christopher Callahan, Esq.

The documentary record was received by the court, as was a copy of the audio tape of the DRB hearing. No transcripts were ordered by any party of any portion of the hearing. The parties were given the opportunity to submit written memoranda of law. Upon consideration of the record and the parties= memoranda, the court determines that the following facts are supported by substantial evidence in the record as a whole, and concludes as follows.

In an on-the-record appeal, the factual findings of the administrative body are given great weight, although they are not conclusive. The court must determine if substantial evidence exists in the record as a whole from which the factual findings of the DRB might reasonably be inferred. See <u>In re Petition of Town of Sherburne</u>, 154 Vt. 596, 604-05 (1990); <u>Appeal of Lussier and Noe</u>, Docket No. 116-5-02 Vtec (Vt. Envtl. Ct., Sept. 16, 2002). If there is conflicting evidence in the record, the DRB is the body charged with weighing this evidence and the court will not disturb its factual findings if supported by substantial evidence in the record as a whole. See <u>Appeal of Doyle</u>, Docket No. 100-5-02 Vtec (Vt. Envtl. Ct., Jan. 21, 2003).

The 1979 Ludlow zoning regulations (applicable to Appellant= s 1985 permit) provided in ' 225 that no land or building development could commence without a zoning permit issued by the Administrative

Officer. The issuance of the zoning permit by the Administrative Officer was the final step in the municipal zoning approval process. Depending on the particular project, other approvals were necessary prerequisites to the Administrative Officer=s issuance of the zoning permit. For all uses other than one- and two-family dwellings, the then-Planning Commission first had to grant site plan approval before the zoning permit could be issued by the Zoning Administrator. ' 275, and see, e.g., Wesco, Inc. v. City of Montpelier, et al., 169 Vt. 520 (1999). For conditional uses (' 250) or for extensions of non-conforming uses (' 255), the then-Zoning Board of Adjustment (ZBA) first had to grant conditional use approval[3] before the zoning permit could be issued by the Zoning Administrator. For permitted uses that did not also require prior site plan approval, under ' 245 the Administrative Officer could proceed directly to issuing the zoning permit. The procedure described in Section 250 was followed in 1985 for this application: a public hearing was held by the then-ZBA, which granted conditional use approval, on the basis of which a zoning permit was issued by the Administrative Officer under ' 225.

In 1985, Appellant applied to the then-ZBA for approval of his plans to build 24 condominium units in six buildings of four residential units each, A to be built in 3 phases of 2 buildings (8 units) per year,@ on property located off West Hill Road[4] on Okemo Mountain in the Town of Ludlow. The project was to be connected to the municipal sewer system but to have an on-site water supply from a drilled well or wells. The ZBA held a public hearing on February 27, 1985, at which it voted to approve the project with certain conditions. It issued a written Notice of Decision on April 19, 1985, which required Appellant to then apply to the Administrative Officer for a zoning permit. Appellant thereafter applied for and received a zoning permit from the Administrative Officer. The zoning permit carries a date on its face of February 27, 1985, referring to the date of approval of the project; however, as the Notice of Decision did not issue until April 19, 1985, we will give Appellant the benefit of that lapse of two months and treat the date of the conditional use approval and the zoning permit as no earlier than April 19, 1985.

Condition 1 of the ZBA= s 1985 conditional use approval required construction to begin A within 120 days of granting of Conditional Use Permit, or permit automatically becomes void.@ Condition 12 required the project to be A in absolute conformance@ with the Town of Ludlow Zoning Regulations. Section 225 of the Zoning Regulations in effect in 1985 required that A [a]ny zoning permit issued shall become void if

the work described therein is not commenced within a period of 120 days from the date of issuance and diligently prosecuted thereafter.@

In addition, Condition 14 of the ZBA= s 1985 conditional use approval prohibited any additions, changes, modifications, or improvements to the project without prior notification to the Zoning Administrator and A prior written mutual agreement@ between the applicant and the board. Condition 15 required the developer to notify the Zoning Administrator upon completion and prior to occupancy. No construction completion date was imposed in the ZBA decision.

Appellant did not appeal the 1985 conditional use approval or any of the conditions imposed in it, and did not request extension of any of the construction commencement dates found in the conditional use approval decision or in ' 225 of the Zoning Regulations.

Appellant also applied in 1985 for Act 250 approval of the project; but received an Act 250 permit on July 16, 1985 for only the first 12 units, based on the amount of water available from the on-site well. The Act 250 permit required Appellant to apply for an Act 250 permit amendment in the future to construct the remaining 12 units, if an additional water supply could be found. The Act 250 permit required the initial 12 units to be completed by October 15, 1986, but this completion date was later extended upon Appellant= s attorney= s request. Thus, as of July 16, 1985, Appellant knew that construction of the second group of 12 units would require further engineering work and a future application for a state water supply and wastewater disposal permit and a future application for an Act 250 permit amendment.

A period of 120 days from the April 19, 1985 zoning permit would have expired on or about August 17, 1985. A period of 120 days from the July 16, 1985 Act 250 permit issuance date would have expired on or about November 13, 1985.

Construction did not begin on the initial 12 units until some time in 1987, as stated by Appellant= s attorney on the audio-taped record of the DRB hearing in the present appeal and as found by the DRB supported by substantial evidence in the record as a whole. Construction of the initial 12 units, in three buildings of four units each, was completed by some time in 1989.

Appellant sold the initial 12 units over the nine years from 1989 through 1998, but did nothing towards construction of the remaining

12 units during that period. At some time not earlier than 1998, Appellant decided to start the process of obtaining the additional water supply and applying for the state water and waste water permit and Act 250 permit amendment for the remaining 12 units. He hired hydrologists and engineers to find additional water; they had to hydrofracture as well as to drill for water, and also extended the sewer lines to the location of the new buildings. Between the engineering and the state water supply and wastewater permitting process the process was lengthy and expensive and cost Appellant approximately $40,000.

Appellant decided not to build the remaining units himself but instead found a prospective purchaser in 2002 to buy the development rights for the remaining 12 units and to apply for the Act 250 permit amendment. At some time in mid-2002, the prospective purchaser contacted the Administrative Officer regarding the status of the 1985 zoning permit and was notified that the permit was no longer valid. This is the decision of the Administrative Officer apparently as memorialized in Attorney Callahan= s October 9, 2002 letter to Attorneys Nitka and Moore. Appellant appealed this determination to the DRB, which upheld the determination that the 1985 conditional use permit was void for failure to diligently prosecute the project, under ' 225; Appellant has appealed the DRB= s decision to this court in the present appeal.

In an on-the-record appeal, as in an appeal from a trial court to the Vermont Supreme Court, legal questions are to be decided independently by the reviewing court. See In re Petition of Town of Sherburne, 154 Vt. 596, 604-05 (1990); Appeal of Lussier and Noe, Docket No. 116-5-02 Vtec (Vt. Envtl. Ct., Sept. 16, 2002); Appeal of Doyle, Docket No. 100-5-02 Vtec (Vt. Envtl. Ct., Jan. 21, 2003). Appellant asks the Court to determine whether the 1985 conditional use permit for construction of 24 condominium units lapsed for failure to diligently prosecute its completion, whether expenditure of $40,000 for engineering and drilling costs to obtain a state water supply and wastewater disposal permit for the remaining 12 units constitutes > diligent prosecution,= whether the lack of a date certain in the permit for completion of a project allows it to lapse if it has been commenced within the required 120 days, whether ' 225 is inapplicable to conditional use permits issued by the DRB, and whether ' 225= s > diligent prosecution= requirement is unconstitutionally vague.

In 1985, Appellant= s 24-condominium project required and obtained conditional use approval by the then-ZBA, under ' 250, as well as obtaining a zoning permit from the Administrative Officer under ' 225

(and see last sentence of ' 250). Condition 1 of the ZBA= s 1985 conditional use approval decision required that A construction must begin within 120 days of granting of Conditional Use Permit, or permit automatically becomes void.@ Appellant did not appeal this action of the then-ZBA, so that the 1985 conditional use approval and all of its conditions became final. 24 V.S.A. ' 4472(d).

Appellant suggests that ' 225 applies only to > permitted use= zoning permits issued under ' 245, thus making the A diligently prosecuted@ limitation in ' 225 of the ordinance inapplicable to his conditional use approval. Appellant is correct that ' 225 only applies to zoning permits, not to conditional use approvals, under the plain terms of the zoning ordinance. See Levy v. Town of St. Albans Zoning Bd. of Adjustment, 152 Vt. 139, 143-44 (1989) (even if a zoning permit has expired, that does not mean that the underlying conditional use approval has also expired).

However, that conclusion does not protect Appellant= s 1985 conditional use approval from having become void due to failure to commence construction as required by its Condition 1. Rather, the fact that the > diligent prosecution= requirement of ' 225 only applies to the Administrative Officer= s zoning permit means that, on the one hand, Appellant= s 1985 zoning permit must be analyzed both for whether construction was commenced in the 120-day period after the permit was issued, and for whether the > work described therein= was diligently prosecuted thereafter. On the other hand, Appellant= s conditional use approval from the then-ZBA must be analyzed only for compliance with each of its conditions, including Condition 1, as Appellant did not appeal or challenge those conditions at the time they were imposed.

Although the Act 250 permit is unrelated to the zoning permit, both permits were required before Appellant could begin construction. Appellant= s Act 250 permit was issued approximately three months after the ZBA= s grant of conditional use approval and the Administrative Officer= s issuance of the zoning permit (at the latest, April 19, 1985). Under the rationale in Preseault v. Wheel, 132 Vt. 247, 254 (1974), Appellant could reasonably have argued that the clock should not have started ticking for the municipal 120-day commencement-of-construction requirement until the last permit allowing construction (the Act 250 permit) was in place on July 16, 1985. Appellant should have gone to the ZBA for an extension of the120 day requirement. However, even using the Act 250 permit issuance date (as the argument most favorable to the landowner),

Appellant did not start construction on the initial 12 units within 120 days from July 16, 1985. The earliest date even suggested in the record for commencement of construction on the initial 12 units was some time in 1987[*], more than a year beyond the expiration of the 120-day period.

Thus, Appellant= s 1985 zoning permit became void under ' 225 because construction did not begin by November 13, 1985, the latest date arguable for the expiration of the 120-day commencement-of-construction period. Appellant=s 1985 conditional use approval became void under its Condition 1 for the same reason. Nevertheless, the first 12 units were built between 1987 and 1989, and no party argues[5] that they were constructed without a proper municipal permit.

Once construction was commenced some time in 1987, it was >diligently prosecuted thereafter= as to the first 12 units, but only as to the first 12 units. We note that Appellant is correct that the three-year time frame in his application was never made a condition of the 1985 conditional use approval nor incorporated in the approval by a requirement that the project be carried out as stated in the application. Applicants are not bound by representations made at a hearing unless the conditions are clearly stated in the board decision or permit. See In re Kostenblatt, 161 Vt. 292, 298 (1994); see also In re Farrell & Desautels, Inc., 135 Vt. 614, 617 (1978) (conditions imposed by a zoning board must be expressed with sufficient clarity and cannot incorporate by reference statements made by an applicant at a hearing). Appellant is correct that the three-year time frame in the application is not an enforceable time limit or expiration date on the zoning permit, and is not dispositive as to whether the project was > diligently prosecuted.=

Nevertheless, even if both approvals had not become void due to the delayed commencement of construction, Appellant= s 1985 zoning permit also became void as to the second group of 12 residential units, for failure to > diligently prosecute= the construction of those remaining 12 units or to seek a delayed date for those units keyed to the acquisition of state water supply and wastewater permits or Act 250 permits for those units. Under any definition of > diligence,= the failure to do any work towards finding additional water and designing an approvable water supply and wastewater disposal system for the second group of 12 units during at least the nine years between 1989 and 1998 does not constitute > diligent prosecution= of the construction of the remaining 12 units.

It is important to note that Appellant=s conditional use approval for the remaining 12 units did not become void for lack of diligent prosecution; rather, it only became void for failure to commence construction within the 120-day period required by its Condition 1. That is, if Appellant had commenced construction of any of the 24 units in time, or had obtained an extension of the commencement date, all that Appellant would now be required to do would be to obtain a new zoning permit based on the 1985 conditional use approval. See, Levy v. Town of St. Albans Zoning Bd. of Adjustment, 152 Vt. 139, 143-44 (1989). However, because the 1985 conditional use approval had already become void for failure to commence construction within the time required by its unappealed Condition 1, Appellant (or his successor in interest) now must obtain both a new conditional use approval (from the now-DRB) and must obtain a new zoning permit, under the current edition of the Ludlow Zoning Regulations, before construction of the remaining 12 condominium units. It is entirely possible that Appellant or his successor may easily qualify for that approval, and that it could go through the municipal process reasonably quickly, but the application must be made in order for the DRB to have the question before it.

Appellant argues that his expenditure of $40,000 for engineering and well-drilling for the remaining 12 units constitutes diligent prosecution of the project. Appellant knew that acquiring an additional water supply was a prerequisite to obtaining the state water supply permit and Act 250 permit for the second group of 12 units. This effort and expenditure began at the earliest in 1998, thirteen years after the issuance of the 1985 permit and nine years after the first 12 units were completed. The DRB reasonably applied a test of A steady, earnest and energetic effort@ to conclude that Appellant=s expenditures in 1998 and later did not constitute > diligent prosecution= of the work authorized in the 1985 permit. It is the time frame, and not the amount of expenditure, that lacks diligence under the terms of ' 225 in the present case.

This is not a case of revocation of a permit, which would require notice to the landowner and a statutorily-authorized process to hear and decide the revocation petition. Rather, it is the case of a permit condition (regarding the conditional use approval), and a self-executing ordinance provision (regarding the zoning permit), which provide for the automatic voiding of a permit for a project not commenced in the first four months after issuance. We do not address whether such an automatic permit-voiding provision is bad municipal policy, or whether it would be a better municipal practice to advise

landowners if and when the Administrative Officer believes that a permit has become void through disuse or through operation of ' 225 or its current equivalent. The fact remains that in the present case it was made a permit condition and was not appealed in 1985, and therefore cannot be challenged, directly or indirectly, in the present appeal. 24 V.S.A. ' 4472(d).

Appellant-Applicant also argues that ' 225 is unconstitutionally vague by use of the term A diligently prosecuted.@ A statute or ordinance may be ruled to be void for vagueness A when it either forbids or requires the doing of an act in terms so vague that persons of common intelligence must guess at its meaning and differ as to its application.@ Richards v. Nowicki, 172 Vt. 142, 150 (2001). In evaluating a void-for-vagueness argument in a permit case, we must first recognize that land use regulations involve an area of law in which some imprecision and generality is necessary and inevitable, Rogers v. Watson, 156 Vt. 483, 491 (1991), and in which the landowner can seek clarification of a statute= s meaning in the administrative process. Rogers, 156 Vt. at 491; and see In re S.M., 2003 VT 41, & 15 and Benning v. State, 161 Vt. 472, 484 (1994) (failure to seek guidance on applicability of statute is fatal to facial challenge to statute). The test also is less strict as applied to a civil or administrative statute rather than a criminal statute. In re S.M., 2003 Vt. 41, & 15.

The requirement that a project be > diligently prosecuted= after having been commenced within the first 120 days after the permit issuance is not unconstitutionally vague. It allows for interruption of work on a project due to seasonal and other construction considerations, such as the need to hydrofracture to obtain sufficient water supply, common to construction projects in Vermont, so long as the project applicant can show diligent effort towards completion of the project. The DRB applied a reasonable interpretation of the phrase as requiring A steady, earnest and energetic effort@ on the part of the project applicant. The phrase is A sufficiently clear to give a person of ordinary intelligence a reasonable opportunity to know what is proscribed.@ Brody v. Barasch, 155 Vt. 103, 110-11 (1990). It is reasonable that a gap of at least nine years without any work on a project did not constitute diligent prosecution of that project.

Based on the foregoing, it is hereby ORDERED and ADJUDGED that the DRB= s decision is upheld that Permit No. 85/86-113 became void by operation of Condition 1 of the conditional use approval and by operation of ' 225 with regard to the zoning permit, and that Appellant

or his successors must apply for a new zoning permit to construct the remaining 12 units approved in Permit No. 85/86-113.

Done at Barre, Vermont, this 19th day of November, 2003.

_____
Merideth Wright
Environmental Judge

[*] As corrected by order dated December 31, 2003

---

## **Footnotes**

[1.]     No written 'decision' of the Administrative Officer appears in the record; the parties both refer to an October 9, 2002 letter from Attorney Callahan to Attorneys Nitka and Moore essentially laying out the issue regarding the permit expiration. The title of 'Administrative Officer' is also sometimes known as 'zoning administrator.'

[2.]    Attorney Callahan entered his appearance for the "Town and Village of Ludlow" but filed legal memoranda on behalf of the "Ludlow Town and Village Development Review Board." However, the only proper municipal party under 24 V.S.A. § 4464(b)(2) is the municipality itself, not the administrative body whose decision is being appealed. As the project appears to be located in the Town of Ludlow, but not in the Village, we treat the Town as the proper party in the present case.

[3.]     Also referred to as a conditional use 'permit' but not to be confused with the zoning permit to be issued by the Administrative Officer after all other approvals have been obtained. Compare, fourth sentence of §250: ("permits are issued immediately after approval") with final sentence of §250: ("permits are issued by the Administrative Officer"); and see last paragraph of front side of ZBA's 1985 Notice of Decision granting conditional use approval: "Please apply to the administrative officer for a zoning permit."

[4.]     The development is also known as the Westwoods or West Wood Condominiums, and now appears to include a "West Woods" Road.

5. While we do not reach the issue in this appeal, it is arguable that the Town would be estopped from challenging the permit status of the initial 12 units.