STATE OF VERMONT

| SUPERIOR COURT | ENVIRONMENTAL DIVISION |
| Vermont Unit | Docket No. 53-4-14 Vtec |

| | |
|---|---|
| Couture Subdivision Permit | DECISION ON MOTION |

Before the Court on appeal is a decision by the Town of Ferrisburgh Planning Commission ("Planning Commission") granting Jacqueline Couture ("Applicant") approval to reconfigure and further subdivide an existing two lot subdivision at 70 Locust Lane in the Town of Ferrisburgh, Vermont ("the Project"). Barry Estabrook and Rux Martin ("Appellants"), who own and occupy property adjacent to the subject property, timely appealed that decision to this Court and filed a Statement of Questions consisting of seven Questions. Applicant filed a Motion seeking Summary Judgment in her favor or dismissal of all seven Questions. In a Decision dated February 23, 2015, this Court dismissed Questions 2, 3, 4, 5, 6, and 7. Also by our Decision dated February 23, 2015, this Court directed Appellants to clarify Question 1 and specifically state the provisions and criteria for which they seek review within 10 business days of the date of that Decision and indicated our intent to dismiss Question 1 in the event Appellants failed to clarify the Question by that date or if the issues presented were beyond the scope of this appeal.

## Discussion

On March 6, 2015 Appellants filed a clarification of Question 1, containing seven sections, generally asking whether the Project complies with the Town of Ferrisburgh Subdivision Regulations ("Regulations") §§ 250.5, 210, 410.5, 410.1, 420.3, 420.7, and 450. For ease of discussion, we consider each of these sections as a subsection of Question 1. In response to Appellants' clarification, Applicant filed a Motion for Judgment on April 3, 2015, asking that the Court dismiss Appellants' clarified Question 1. We review this motion for judgment as a matter of law under Vermont Rule of Civil Procedure 56.

1

In ruling on Applicant's motion, we must assume the factual allegations made by Appellants are true, view those facts in the light most favorable to Appellants, and can only grant judgment to Applicant if she has shown that based on those facts she is entitled to judgment as a matter of law. Robertson v. Mylan Labs., Inc., 2004 VT 15, ¶ 15, 176 Vt. 356 (internal citations omitted); V.R.C.P. 56(c) (laying out summary judgment procedures). It is with these procedural guidelines in mind that we review the subsets of Appellants' revised Question 1.

I.      **Question 1(1): Regulations § 250.5**

Regulations § 250.5 requires review of the "practicability of the preliminary plat" and provides that "[p]articular attention shall be given to . . . the requirements of the Comprehensive Development Plan." By their clarified Question 1(a), Appellants argue that Applicant has a burden to demonstrate how the Project complies with requirements from the Town Plan discouraging development in the area of the Project. (Appellants' Clarification at 2, filed Mar. 6, 2015). Applicant asks this Court to dismiss Question 1(1) for several reasons. First Applicant states that Question 1(1) should be dismissed because Appellants' clarification does little to clarify the Question as they have failed to cite a particular provision of the Town Plan, leaving both the Court and the parties without notice of what issues to prepare for trial. Second, Applicant argues that Appellants are incorrect that the Town Plan discourages development in the area of the Property. Finally, Applicant argues that § 250.5 is too vague to be an enforceable standard applied in evaluating subdivision applications.

Any statement of questions informs the parties of the issues being appealed and establishes the scope of the appeal. In re Frostbite Mine, No. 12-1-11 Vtec, slip op. at 1-2 (Vt. Super. Ct. Envtl. Div. Nov. 3, 2011) (Durkin, J.). Furthermore, the Court and opposing parties "are entitled to a statement of questions that is not vague or ambiguous, but is sufficiently definite so that they are able to know what issues to prepare for trial." In re Unified Buddhist Church, Inc., Indirect Discharge Permit, No. 253-10-06 Vtec, slip op. at 5 (Vt. Envtl. Ct. May 11, 2007) (Wright, J.). The Court agrees with Applicant that Appellants' clarification in Question 1(a) does little to provide Applicant or this Court with notice of what issues to prepare for trial.

2

Question 1(1) essentially rephrases Appellants original Question 1, which asked whether the Project satisfies the Regulations, so that it now asks whether the Project satisfies the Town Plan. As in their original Question 1, Appellants do not cite any specific sections of the Town Plan; rather, they merely raise the issue of compliance with the Town Plan generally. Furthermore, like the Applicant, the Court does not find a section of the Town Plan that discourages development in the area of the Project. In fact, the Town Plan designates the area in which the Property is located as a Rural Residential Land Use Planning area. Ferrisburgh Town Plan at 63. According to the Town Plan, the character of the Rural Residential areas are "rural with relatively low to medium densities (for Ferrisburgh) or clustered development, typically close to town roads. . . . Year-round family dwellings are the intended use for this district. . . ." Id. at 66. Without further explanation, neither the Court nor the parties are able to determine what issues to prepare for trial. Question 1(1) is, therefore, **DISMISSED**. Having dismissed Question 1(1) for the above reasons, we need not address whether § 250.5 is too vague to be an enforceable.

## II.    Question 1(2): Regulations § 210

Regulations § 210 requires subdivision approval before "grading, clearing, construction or other improvement is undertaken." By their clarified Question 1(2), Appellants argue that Applicant violated this section of the Regulations by proceeding with the excavation of two septic fields, a driveway, a foundation, and construction of a modular home prior to obtaining subdivision approval. (Appellants' Clarification at 2). Applicant asks this Court to dismiss Question 1(b) because matters concerning septic fields are outside this Court's jurisdiction, as indicated in this Court's February 23 Decision, and because the listed activities were conducted pursuant to Zoning Permit 13-101, issued by the Town of Ferrisburgh Zoning Administrator on October 15, 2013.

We agree with Applicant that matters related to septic fields are outside this Court's jurisdiction. Furthermore, whether Applicant's construction is or is not in compliance with Zoning Permit 13-101 is a matter of first instance for the Town of Ferrisburgh Zoning Administrator, and not this Court. 24 V.S.A. §§ 4451, 4452. The sole issue in this de novo appeal is whether Applicant is entitled to a subdivision permit. Any alleged violations of the

3

Regulations must come to the Court through a properly initiated enforcement action. For these reasons, Appellants' clarified Question 1(2) is **DISMISSED**.

### III.    Question 1(3): Regulations § 410.1

Regulations § 410.1 states that "[a]ll land to be subdivided shall be, in the judgment of the Commission, of such a character that it can be used for building purposes without danger to public health or safety, or to the environment. Land subject to periodic flooding, poor drainage . . . shall not ordinarily be subdivided." By their Question 1(3), Appellants argue that the Project should not be subdivided because the Property is "low, portions of it flood annually, and according to claims made by the engineer who installed the septic mounds, nearly all of it has poor drainage." Applicant argues that § 410.1 is too vague for this Court to apply to review of an application, that Appellants have no standing to raise this argument because the Property's susceptibility to flooding has no impact on Appellants' land, and that regardless, the Property is free of hydric soils[1] and is not located in either wetlands or a FEMA Flood Hazard Area, as designated by the Town Plan.

We first address whether § 410.1 is enforceable or unconstitutionally vague. When reviewing a municipal land use decision, we begin with the presumption that a zoning regulation is constitutional. In re Highlands Development Co., LLC, No. 194-10-03 Vtec, slip op. at 13 (Vt. Envtl. Ct. Feb. 2, 2010) (Wright, J.) (citing Hunter v. State, 2004 VT 108, ¶ 31, 177 Vt. 339). Our approach to complaints of "standardless, arbitrary discretion focuses on the criteria for due process and equal protection." In re Pierce Subdivision Application, 2008 VT 100, ¶ 19, 184 Vt. 365 (citing In re Handy, 171 Vt. 336, 345-46 (2000)). We will consider two factors to determine whether a regulation is void for vagueness and thus unconstitutional. First, we consider whether the regulation is "sufficiently precise that an ordinary person using the means available and ordinary common sense can understand the meaning and comply" and does not leave an applicant "uncertain as to what factors are to be considered by the [municipal panel]." Rogers v. Watson, 156 Vt. 483, 491 (1991) (citing Brody v. Barasch, 155 Vt. 103, 111 (1990); Town of Westford v. Kilburn, 131 Vt. 120, 124 (1973). Second, we consider whether the

---

[1] As defined by the Town Plan, hydric soils are those "perpetually saturated with water such that the physical, chemical and biological properties reflected in the soil profile clearly demonstrates long periods of saturation."

4

regulation provides standards that sufficiently guide municipal decisions and therefore do not allow for the "exercise of discretion in an arbitrary or discriminatory fashion." Pierce Subdivision, 2008 VT 100 at ¶ 20 (quoting Kilburn, 131 Vt. at 124).

Additionally, we must strike a balance between the flexibility a municipal panel must have in reviewing a specific development proposal and a landowner's right to know what standards govern an application. See Rogers, 156 Vt. at 491; see also Handy, 171 Vt. at 349; Kilburn, 131 Vt. 124 ("On one hand the standards governing the delegation of such authority should be general enough to avoid inflexible results, yet on the other hand they should not leave the door open to unbridled discrimination."). Thus, while we must "invalidate ordinances that 'fail to provide adequate guidance" and allow for "ad-hoc decision making that is essentially arbitrary," we will uphold general standards "accompanied by some ability of landowners to predict how discretion will be exercised." Pierce Subdivision, 2008 VT 100, ¶ 20 (quoting Kilburn, 131 Vt. at 125); Handy, 171 Vt. at 349. For this reason, we consider the regulation in the context of the entire ordinance so that "even if some of the bylaws' objectives are general," it may be constitutional "as long as other provisions impose specific limits to guide and check the [decisionmaker's] discretion." Rogers, 156 Vt. at 491; Pierce Subdivision, 2008 VT 100 at ¶ 24 ("By providing both general and specific standards for [ ] review, the bylaw strikes an appropriate balance between providing guidance to the Commission and avoiding inflexible requirements which would defeat the creativity and flexibility required to effectuate the goals of the [bylaws].")).

Applicant argues that the requirement under § 410.1 that certain land prone to flooding and/or with poor drainage "shall not ordinarily be subdivided" is too ambiguous to be enforceable. We disagree. The preceding sentence of the Regulations informs the interpretation of this standard. That sentence requires that land to be subdivided be "of such a character that it can be used for building purposes without danger to public health or safety, or to the environment." Regulations § 410.1. Section 410.1 allows for discretion when considering whether land is suitable for subdivision; it does not allow for arbitrary decision making, but rather for flexibility.

5

Addressing Applicant's second argument, standing to appeal municipal zoning decisions is governed by 24 V.S.A. § 4465 and may not be judicially expanded. In re Verizon Wireless Barton Permit, 2010 VT 62, ¶ 7, 188 Vt. 262 (quoting Garzo v. Stowe Bd. Of Adjustment, 144 Vt. 298, 302 (1984)). Section 4471(a) extends standing to appeal a municipal panel's decision to "interested persons" who participated in the proceedings below. See 24 V.S.A. § 4465(b)(defining interested person). An interested Person is defined in 24 V.S.A. § 4465(b)(3) as one "owning or occupying property in the immediate neighborhood of a property that is the subject of any decision or act" who can "demonstrate a physical or environmental impact" on their interest under the criteria reviewed.

Applicant argues that whether the Property is subject to periodic flooding or poor drainage has no physical or environmental impact on Appellant's interest. We disagree. Appellants occupy property adjacent to the Project and it is possible that any flooding or exacerbation of drainage issues could result in flooding of their property. This is sufficient for standing to raise the issue.

Finally, as to Applicant's argument that her property contains no hydric soils, in ruling on Applicant's motion we must assume the factual allegations made by Appellants are true. Although Applicant attempts to controvert Appellants statement that the property fails to comply with § 410.1 by showing that her property is free of "hydric soils" and is not located in either wetlands or a FEMA Flood Hazard Area, we cannot conclude based on these facts alone that the Project satisfies the requirement in § 410.1 that "[l]and subject to periodic flooding, poor drainage . . . shall not ordinarily be subdivided."

We interpret a zoning ordinance using the familiar rules of statutory construction. In re Appeal of Trahan, 2008 VT 90, ¶ 19, 184 Vt. 262. We will "construe words according to their plain and ordinary meaning, giving effect to the whole and every part of the ordinance." Id. Where the plain meaning of the ordinance is clear, it must be enforced and no further interpretation is necessary. Vermont Alliance of Nonprofit Orgs. v. City of Burlington, 2004 VT 57, ¶ 6, 177 Vt. 47 (citing Hill v. Conway, 143 Vt. 91, 93 (1983)).

Regulations § 410.1 states that ""[a]ll land to be subdivided shall be, in the judgment of the Commission, of such a character that it can be used for building purposes without danger to

public health or safety, or to the environment. Land subject to periodic flooding, poor drainage . . . shall not ordinarily be subdivided." By its plain language, § 410.1 requires consideration of an areas potential to flood in the context of the overall character of an area to be subdivided. The Regulations themselves do not define "periodic flooding" or "poor drainage," and we cannot now determine whether Applicant's property is subject to periodic flooding and/or poor drainage based on the facts that it is free of "hydric soils" and is not located in either wetlands or a FEMA Flood Hazard Area alone. Because the issue of whether the Property is subject to periodic flooding and/or poor drainage is a question of fact, we must take evidence on the issue and cannot now dismiss Question 1(3). For this reason, we **DENY** Applicant's motion for judgment on Question 1(3).

## IV.     Question 1(4): Regulations § 410.5

Regulations § 410.5 requires that "due regard shall be given to the preservation and protection of existing features, trees, scenic points . . . ." By their Question 1(4), Appellants argue that Applicant has the burden of demonstrating that the Project is designed so as to minimize its impact on scenic points. Applicant asks the Court to dismiss Question 1(4) because Appellants have already raised, and this Court has already addressed, the enforceability of § 410.5.

In this Court's February 23 Decision, we addressed § 410.5, stating that although the provision "states an admirable goal for land use planning in Ferrisburgh, we are at a loss to determine what standards are established to guide us in making sure that 'due regard' is shown by the proposed subdivision." In re Couture Subdivision Permit, No. 53-4-14 Vtec, slip op. at 6 (Vt. Super. Ct. Envtl. Div. Feb. 23, 2015) (Durkin, J). We directed that Appellants clarify the challenge they sought to bring under § 410.5 and how the Court should address compliance with that section. Id. As understood by this Court, Appellants' now argue that "due regard" requires consideration of the criteria within § 410.5 as they apply to the Project's impacts on existing features of the subject property. (Appellants' Motion at 2, filed Mar. 6, 2015). Appellants further argue that "[d]ue regard puts the burden on the applicant to demonstrate that the project is designed in such a way as to minimize the impact of the subdivision." Id. This clarification does not, however, provide guidance to the parties or the Court other than to

7

provide an equally vague synonym for "due regard." The Court therefore maintains the conclusion announced in our February 23 Decision that there are no meaningful standards for review under § 410.5; for this reason, Question 1(4) is **DISMISSED**.

## V.    Question 1(5): Regulations § 420.3

Regulations § 420.3 states that "[i]ntersection of streets shall be 90 degrees." Appellant argues that Applicant's driveway does not intersect with the street at 90 degrees. Applicant argues, however, that the Project's gravel driveway is not a street, as defined in Article V of the Regulations. As stated above, we interpret a zoning ordinance using the familiar rules of statutory construction and will "construe words according to their plain and ordinary meaning, giving effect to the whole and every part of the ordinance." In re Appeal of Trahan, 2008 VT 90, ¶ 19, 184 Vt. 262.

As defined by the Regulations, a street is any "road, highway, avenue, street, land or other way between right-of-way lines, commonly used by the public for traffic." The question before the Court is, therefore, whether the driveway is considered to be "commonly used by the public." Although the Regulations do not define "public use," we consider the term under its plain meaning to mean open to use by the general public without unreasonable restriction. While "street" would therefore include privately owned roads, it would be limited to those privately owned roads open to use by the public without restriction; a privately owned driveway providing access to an individual residence is not open to use by the public and is therefore not a street under the Regulations. Because the Regulations do not require driveways to be at a right angle to streets or to other driveways, the Court **GRANTS** Applicant judgment as a matter of law under Appellants' Question 1(5).

## VI.    Question 1(6): Regulations § 420.7

Regulations § 420.7 limits the length of dead-end streets, cul-de-sacs, and turn-arounds to 1200 feet, with an exception for temporary dead-end streets, and requires that dead-end streets and cul-de-sacs terminate in a turn-around with a radius of 100 feet and a minimum paved area of 20 feet. By their Question 1(6), Appellants summarize the Regulation. Applicant asks that this Court dismiss Question 1(6) because a gravel driveway is not a street, and

8

furthermore, the Regulations contain no requirements that driveways must have a turn-around with a radius of 100 feet and a minimum paved area of 20 feet.

As stated above, the Court agrees that a driveway is not a street, as defined by the Regulations, and that furthermore, the Regulations do not require that driveways comply with § 420.7. For this reason, the Court **GRANTS** Applicant judgment as a matter of law on Appellants' clarified Question 1(f).

## VII. Question 1(7): Regulations § 450

Regulations § 450 states that "[a]n adequate surface storm water drainage system for the entire subdivision area shall be provided" and that "[w]here a subdivision is traversed by a water course or drainage way, there shall be provided a drainage easement of such width to encompass the 25-year flood area of such water course, such easement shall be indicated on the final plat." By their Question 1(7), Appellants argue that "the subdivision is traversed by a watercourse and this requirement has not been met." In response, Applicant reiterates that the Property is not a wetland or FEMA flood hazard area and is essentially free of hydric soils. Additionally, Applicant argues that § 450 provides no guidance as to how to determine whether a stormwater drainage system is "adequate" or how to determine a "25-year flood area" and is therefore not an enforceable standard.

By its plain language, § 450 requires a drainage easement where "a subdivision is traversed by a water course or drainage way." Although Applicant offers that the Project is not a wetland or FEMA flood hazard area and is free of hydric soils, they have not indicated whether the Project is or is not traversed by a water course or drainage way. This is a question of fact that must be resolved through a trial. Because the provision specifically requires a drainage easement when a subdivision is traversed by a water course or drainage way, the Court does not find Applicant's argument persuasive.

As to Applicant's argument that § 450 is not an enforceable standard because it provides no guidance as to how to determine whether a stormwater drainage system is "adequate" or how to determine a "25-year flood area," the Court reiterates that we begin with the presumption that a zoning regulation is constitutional. In re Highlands, No. 194-10-03 Vtec, slip op. at 13 (Vt. Envtl. Ct. Feb. 2, 2010) (Wright, J.) (citing Hunter v. State, 2004 VT at ¶ 31).

9

Considering the factors listed above, the Court disagrees with Applicant's assertion that § 450 is standardless.  First, a 25-year flood is defined within the Vermont Stormwater Management Manual and therefore the Regulations inclusion of reference to a 25-year flood provides adequate standards.  Second, requiring that a stormwater system be adequate to address such a flood event does not open the door to arbitrary decision making, but rather provides flexibility to the municipal panel to determine whether the system is adequate to handle a certain amount of stormwater or not.  For this reason, we **DENY** Applicant's motion for judgment on Appellants' clarified Question 1(7).

## Conclusion

We **DENY** Applicant's motion for judgment on Appellants' clarified Questions 1(3) and 1(7), but **GRANT** Applicant's motion on Questions 1(1), 1(2), 1(4), 1(5), and 1(6).  Questions 1(1), 1(2), 1(4), 1(5), and 1(6) are therefore resolved in Applicant's favor.  Questions 1(3) and 1(7) remain for trial.


Electronically signed on June 17, 2015 at Newfane, Vermont, pursuant to V.R.E.F. 7(d).

_____
Thomas S. Durkin, Judge
Environmental Division

10